## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT NICHOLS FLINT DILLE, a California resident, and LORRAINE DILLE WILLIAMS, a Florida resident, | **Civil Action No. 20-cv-00924-WB** |
| Plaintiffs, | **(Related to Case No. 15-cv-06231-WB)** |
| v. | |
| LOUISE A. GEER, as Claimed Trustee of the Dille Family Trust and Pennsylvania resident, DANIEL I. HERMAN, a Pennsylvania resident DAVID KLOSS, a New York resident, BRIAN McDEVITT, a Trustee of the Nowlan Family Trust and Pennsylvania resident, DIANE McDEVITT, a Trustee of the Nowlan Family Trust, a Member of the Buck Rogers Company and Pennsylvania resident, JOHN O' MALLEY, a Pennsylvania resident, HENRY M. SNEATH, a Pennsylvania resident, GEER AND HERMAN, P.C., a Pennsylvania Professional Corporation, KLOSS STENGER & LoTEMPIO, a New York Law Practice, the BUCK ROGERS COMPANY, a Pennsylvania limited liability company, and THE NOWLAN FAMILY TRUST, a Pennsylvania Business Trust, | |
| Defendants. | |

**AMENDED COMPLAINT FOR (i) RELIEF FROM JUDGMENT TO REMEDY FRAUD UPON THE COURT; (ii) BREACH OF FIDUCIARY DUTY; (iii) CONSTRUCTIVE FRAUD/FRAUDULENT CONCEALMENT; (iv) NEGLIGENCE; (v) CONSPIRACY TO BREACH FIDUCIARY DUTY AND TO COMMIT CONSTRUCTIVE FRAUD/ FRAUDULENT CONCEALMENT; and (vi) AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AND CONSTRUCTIVE FRAUD/FRAUDULENT CONCEALMENT**

The Plaintiffs and sole beneficiaries of the Dille Family Trust, Robert Nichols Flint Dille

and Lorraine Dille Williams, by and through their undersigned counsel, hereby submit this

Amended Complaint for Relief from Judgment to Remedy Fraud Upon the Court and for Breach of Fiduciary Duty; Constructive Fraud; Negligence; Conspiracy to Breach Fiduciary Duty; and Aiding and Abetting Breach of Fiduciary Duty, as follows.

## I.    PRELIMINARY STATEMENT

As described in this Amended Complaint, Defendants Louise A. Geer ("**Geer**"), David Kloss ("**Kloss**"), and John O'Malley ("**O'Malley**") have improperly interfered with the administration of justice. In order to protect this Court's integrity, it must employ the extraordinary remedy of vacating a judgment dismissing a case with prejudice. Defendants Geer, Kloss and O'Malley committed a fraud upon the Court by concealing and affirmatively misrepresenting critical facts to the Court in order to obtain a judgment in the case of *The Dille Family Trust v. The Nowlan Family Trust*, E.D. Pa., case no. 2:15-cv-06231-WB (the "***DFT/NFT Litigation***").

The Dille Family Trust ("***DFT***") is a California family trust, formed more than 40 years ago. The Plaintiffs are the only two beneficiaries of the DFT (the "***Beneficiaries***"). DFT's Assets once included certain intellectual property rights from the fictional world of "Buck Rogers." The Beneficiaries exercised their fully vested right to remove all assets from the DFT, effective February 20, 2018. Nevertheless, only days alter on February 28, 2018, Defendants Geer, Kloss, and O'Malley, presented a sham settlement to the Court. This fraud was compounded by the fact that in August 2018 to dispel any notion of Geer's purported Trustee authority, by unanimous action by the Beneficiaries such authority was revoked once and for all and Geer was instructed to refrain from holding herself out in such capacity. Significantly, no court ever appointed Geer as the Trustee of the Dille Family Trust in the first place.

Subsequently, Kloss claimed that he was DFT's attorney when he presented the sham settlement of the DFT/NFT Litigation, despite that his law partner had already admitted that he

*and his entire law firm* held a disqualifying conflicting interest with the DFT.  Moreover, Daniel I. Herman ("**Herman**"), the attorney who hurriedly moved for Kloss' admission had already withdrawn as counsel to the DFT, citing his own unresolvable conflict.  Those conflicting interests would prove consequential.  Despite having had actual knowledge of the Beneficiaries' opposition to any such settlement, let alone her authority, Geer and the Nowlan Family Trust ("**NFT**") declined to involve or advise the Beneficiaries.  In fact, their purported settlement documents *anticipated* that the Beneficiaries would take legal action when they discovered the fraud, providing a one-way indemnification of NFT's defense costs—and the dissolution of the Dille Family Trust.  Of course, the Defendants disclosed none of that to Court presiding over the DFT/NFT Litigation.

The "settlement" had not been the first improper scheme of Geer and NFT to misappropriate the "Buck Rogers" assets.  In fact, the "settlement" arose only days after their failed attempt to jointly acquire such assets over the objections of the Beneficiaries, through the unauthorized and invalid chapter 11 bankruptcy petition that Geer had signed on behalf of the DFT (again without notice or approval from the Beneficiaries).  In another previously botched effort, Geer had essentially attempted to secure the assets for herself alone, also over the objections of the Beneficiaries.

But the presentation of the "settlement" would not involve the disclosure of any of those details—and the Beneficiaries would have no opportunity to object.  Instead, Geer, Kloss, and O'Malley sought court approval of the terms of the settlement, while assuring the Court that the settlement was *not* confidential.  Later, after the Court refused to extend its imprimatur to the deal, those same officers of the court would take a different view.  When the Beneficiaries finally discovered Geer's purported settlement of the DFT/NFT Litigation and began to take steps to

protect their interests, Geer engaged Henry M. Sneath ("**Sneath**") to represent her personally. Promptly after engaging Sneath, Geer executed a Confidentiality and Non-Disclosure Agreement—with no additional consideration, and months after the Court's refusal to approve the same non-confidential settlement.

O'Malley represented in a colloquy with another court that the settlement details were *so* confidential that he could not so much as describe the arrangement. Before the same court, Sneath first said that he knew no non-public information about the sham settlement, only to reverse himself by the end of that hearing. With such tactics, the Defendants prevented the Beneficiaries from seeing the fraudulent settlement documents for nearly an entire year—and then, only after a court order compelling their disclosure over Geer's vociferous objection.

The injustice resulting from the Defendants' fraud upon the Court is grievous. For example, the Defendants claim that a payment of $300,000 from the so-called settlement is in "safekeeping" in New York with the same law firm whose principal admitted that it held an "impossible to resolve" conflict of interests with the Dille Family Trust. Meanwhile, NFT and its counsel contend that NFT now controls the disposition of the Dille Family Trust's intellectual property—and the exclusive right to bring any and all claims and causes of action of the Dille Family Trust. For her part, Geer now claims that the Dille Family Trust owes her more than the entire "settlement fund" because she claims to have lent cash to it to pay the fees of the attorneys of the Dille Family Trust. However, in reality, Geer sought to recover the cost of her own— *personal*—legal defense. Moreover, a substantial portion of the cost of her defense would be advanced by Geer's professional liability insurer.

Meanwhile, Geer and her co-defendants contend that the Beneficiaries are entitled to nothing—not even an explanation. Through this action, the Beneficiaries seek a remedy from the

harm resulting from the Defendants' concerted and egregious misconduct and fraud upon the Court.

## II.    JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction on several grounds, including (i) diversity jurisdiction pursuant to 28 U.S.C. § 1332, since the citizenship of the parties is completely diverse and the amount in controversy exceeds $75,000.00; and (ii) supplemental jurisdiction under 28 U.S.C. § 1367, because the Complaint seeks to redress a fraud committed upon this Court.

2.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(a), as a substantial part of the events or omissions giving rise to the claims herein occurred in the United States District Court for the Eastern District of Pennsylvania located in Philadelphia, Pennsylvania.

## III.    THE PARTIES

3.     Plaintiff, Robert Nichols Flint Dille ("*Mr. Dille*" or "*Beneficiary*") is a California resident domiciled in Los Angeles, California, residing at 10966 Strathmore #4, Los Angeles, CA 90024-2426.  Mr. Dille is one of the two sole beneficiaries of the Dille Family Trust.

4.     Plaintiff, Lorraine Dille Williams ("*Ms. Williams*" or "*Beneficiary*") is a Florida resident and a domiciliary of Florida and Illinois, with addresses at 186 Shelter Lane, Jupiter Inlet Colony, FL 33469, and 1187 Hawkweed Lane, Lake Forest, IL 60045.  Ms. Williams is one of two sole beneficiaries of the Dille Family Trust, with her brother Mr. Dille being the other.

5.     Upon information and belief, Defendant, Louise A. Geer is a resident and domiciliary of Pennsylvania, with a business office at 2100 Wilmington Road, New Castle, PA 16105.  Geer is a Pennsylvania attorney, a partner in the law firm Geer and Herman, P.C., who continues to claim, without authority, that she is the trustee of the Dille Family Trust.

6.      Upon information and belief, Defendant, Daniel I. Herman is a resident and domiciliary of Pennsylvania, with a business office at 2100 Wilmington Road, New Castle, PA 16105.  Herman is a Pennsylvania attorney, a partner in the law firm Geer and Herman, P.C., and is Geer's spouse, law partner and, from time to time, Geer's attorney.

7.      Upon information and belief, Defendant, David Kloss is an individual and a licensed attorney, residing and domiciled in the vicinity of Buffalo, New York, with a business office at 69 Delaware Avenue, No. 1003, Buffalo, NY 14202.

8.      Upon information and belief, Defendant, Brian McDevitt ("*Mr. McDevitt*") is an individual and a licensed attorney, and residing and domiciled in Bryn Mawr, Pennsylvania and receiving mail at 115 Airdale Road, Bryn Mawr, PA 19010. Upon information and belief, Mr. McDevitt is (i) a trustee of the Nowlan Family Trust, allegedly a business trust with its situs in Pennsylvania; and (ii) a member and manager of Defendant, the Buck Rogers Company, LLC.

9.      Upon information and belief, Defendant, Diane McDevitt ("*Ms. McDevitt*") is an individual, and residing and domiciled in Bryn Mawr, Pennsylvania and receiving mail at 115 Airdale Road, Bryn Mawr, PA 19010. Upon information and belief, Ms. McDevitt is (i) a trustee of the Nowlan Family Trust, allegedly a business trust with its situs in Pennsylvania; and (ii) a member of Defendant, the Buck Rogers Company, LLC.

10.     Upon information and belief, Defendant, John O'Malley is an individual, and residing and domiciled in the vicinity of Philadelphia, Pennsylvania, with a business office at 30 South 17th Street, Philadelphia, PA 19103-4009.   Upon information and belief, O'Malley is a shareholder in Volpe & Koenig, P.C.

11.     Upon information and belief, Defendant, Henry M. Sneath is a resident and domiciliary of Pennsylvania.  Sneath is a Pennsylvania attorney, a partner in the law firm Houston

Harbaugh, P.C., and has variously purported to serve as counsel to Geer, Herman and the Dille Family Trust.  Sneath maintains a business office at 401 Liberty Avenue, 22nd Floor, Pittsburgh, PA 15222-1005.

12.    Upon information and belief, Defendant, Geer and Herman, P.C. ("*GH*") is a Pennsylvania restricted professional corporation, with a business office at 2100 Wilmington Road, New Castle, PA 16105.  Upon further information and belief, Defendant Geer and Defendant Herman are shareholders in GH.

13.    Upon information and belief, Defendant, Kloss Stenger & LoTempio ("*KSL*") is a New York law practice, with a business office at 69 Delaware Avenue, No. 1003, Buffalo, NY 14202.  Upon further information and belief, Defendant David Kloss is a shareholder in KSL.

14.    Upon information and belief, Defendant, the Buck Rogers Company ("*BRC*") is a limited liability company recently formed under Pennsylvania law, with its registered place of business in Bryn Mawr, Pennsylvania, receiving mail at 115 Airdale Road, Bryn Mawr, PA 19010.

15.     Upon information and belief, Defendant, the Nowlan Family Trust is allegedly a business trust, formed under Pennsylvania law, with its registered place of business in Bryn Mawr, Pennsylvania, receiving mail at 115 Airdale Road, Bryn Mawr, PA 19010.

## IV.    FACTS

### Formation and Status of the Dille Family Trust

16.    The DFT was formed under California law on August 16, 1979, by the Plaintiffs' parents Robert C. Dille and Virginia N. Dille.  A true and correct copy of the 1979 trust instrument is attached hereto as *Exhibit A*.

17.    The DFT trust instrument was amended on January 5, 1982.  A true and correct copy of the 1982 amendment is attached hereto as *Exhibit B*.

18.     At all times, the DFT has remained an ordinary estate planning trust (*i.e.*, a fiduciary relationship).

19.     The DFT is expressly governed by the laws of the State of California.  *Exh. A*, § 2.F.

20.     The original situs of the DFT was California, but its beneficiaries changed the situs to Illinois on February 1, 1989. A true and correct copy of the instrument transferring situs is attached hereto as *Exhibit C*.

21.     The DFT trust instrument defines the term "corporate trustee," which must be:

```
a    bank,    corporation   or   other   financial
institution… authorized  by  law  to  administer
trusts, maintaining a full-time trust department,
and having a combined capital and surplus of at
least ten million dollars ($10,000,000.00).
```

*Exh. A*, § 3.B.

22.     Geer does not qualify as a "corporate trustee" within the meaning of the DFT trust.

23.     After the death of the settlors of the DFT, the trust does not provide a mechanism for replacement or appointment of a trustee other than a "corporate trustee."

24.     Thus, under the DFT's governing statutory law, court approval would have been required for Geer to have been appointed trustee of the DFT.  *See* Cal. Prob. Code § 15660(d).

25.     Geer has admitted that no court has appointed her trustee of the Dille Family Trust.

26.     On June 6, 2011, the Plaintiffs each signed a one-page document, styled "Dille Family Trust: Appointment of Successor Trustee," which Geer had drafted.  Geer did not advise the Plaintiffs to seek advice from separate counsel before signing the one-page document.

27.     By operation of the Dille Family Trust instrument and controlling California statute, Geer's documents styled, "Dille Family Trust: Appointment of Successor Trustee," are legal nullities.

28.     As a non-business trust, the DFT represents a fiduciary relationship between the Beneficiaries and the trustee of the DFT.

**Relevant Related Cases**

29.     **The** "***DFT/NFT Litigation.***"  This action for fraud upon the court arises from the Defendants' February 28, 2019 so-called "settlement" of the long-pending litigation between the DFT and the Nowlan Family Trust, initiated at the behest of Geer and/or Herman.  *The Dille Family Trust v. The Nowlan Family Trust*, (E.D. Pa., case no. 15-cv-06231-WB).

30.     As articulated with greater particularity, *infra*, the Defendants' purported settlement of the DFT/NFT Litigation was procured through a fraud upon the Court.

31.      **The** "***Chapter 11 Case.***"  On November 28, 2017, Geer improperly authorized the filing of a voluntary petition under chapter 11 of the Bankruptcy Code—without notice to or approval of either Beneficiary of the DFT (Bankr. Pa. W.B., case no. 17-24771-JAD).

32.     Importantly, the DFT need not have been financially distressed.  That is because Ms. Williams, in reliance upon Geer and at her urging, lent more than $300,000 to the DFT prior to Geer's then-secret authorization of the filing of the Chapter 11 Case.  Those loaned funds would have been sufficient to address DFT's creditors' claims.

33.     However, Geer transferred the majority of the proceeds from Ms. Williams' loans to her own law firm, HG—without any invoice, explanation or even disclosure.

34.     Notwithstanding the obvious conflict of interests, on October 22, 2018, Herman entered his appearance in the Chapter 11 Case on behalf of purported *creditors*, (i) Kloss, Stenger & LoTempio; and (ii) Geer.  *Chapter 11 Case*, doc. nos. 356-57.

35.     An ordinary trust like the DFT is not eligible for bankruptcy protection under chapter 11, but Geer falsely represented in the voluntary petition that the DFT was a "business trust."

36.     In fact, on September 15, 2015, when seeking dismissal of a federal case against the DFT in California, Geer *admitted* that the DFT was "is not a legal entity that can sue or be sued" instead, it "is merely a fiduciary relationship that is not separate from its trustees."  A copy of that pleading is attached hereto as *Exhibit D* and the quoted language appears on page 11.

37.     When it suited her, Geer acknowledged in another federal court that the DFT is "an ordinary express trust [and] is not an entity separate from its trustees."  *Id.*

38.     However, the trustee of an ordinary trust would owe a fiduciary duty to the trust's beneficiaries, which would require a trustee to keep the trust's beneficiaries reasonably informed on the trust's activity.

39.     On July 25, 2018, the Bankruptcy Court appointed a chapter 11 trustee to displace Geer, after her "contumacious failure to respond to discovery requests."  A copy of the July 25, 2018, Memorandum Opinion appointing a chapter 11 trustee is attached hereto as *Exhibit E.*

40.     On November 1, 2018, Geer, acting through her attorney/spouse, Herman, filed a chapter 11 plan, through which Geer would take ownership of the assets of the Dille Family Trust (the "***Geer Plan***").  A copy of the Disclosure Statement describing the Geer Plan is attached hereto as *Exhibit F.*

41.     In her Disclosure Statement, Geer represented the value of the DFT's assets to have been $1.22 million.  *Exh. F*, p. 7.

42.     In her Disclosure Statement, Geer also claimed that the need for the bankruptcy had been anticipated litigation costs of "$500,000 to $750,000… with no source of funds to pay" them. *Exh. F*, p. 2.

43.     However, Geer's Disclosure Statement promised 100% payment of administrative claims, other priority claims, and unsecured claims totaling $1,014,285.27 within one year (*i.e.,* $714,285.27 more than contemplated under the sham settlement she and NFT would later present to this Court in the DFT/NFT Litigation).  *Exh. F*, pp. 17-18.

44.     On December 4, 2018, Geer and NFT—acting in concert, over the objections of the Beneficiaries—sought to purchase the DFT's assets (the "***NFT-Geer Plan***").  A copy of the Disclosure Statement describing the NFT-Geer Plan is attached hereto as *Exhibit G*.

45.     Under the NFT-Geer Plan, the "Nowlan Family Trust and Louise Geer… [promised] cash consideration totaling $500,000" (*i.e.,* $200,000 more than contemplated under the sham settlement they would present to this Court only a short time later).  *Exh. G*, p. 2.

46.     The Beneficiaries opposed the Geer Plan and the NFT Plan, as evidenced by the declarations of Mr. Dille and Ms. Williams, filed in the Chapter 11 Case on December 11, 2018. Copies of those declarations (with the DFT trust documents omitted for efficiency) are attached hereto as *Exhibit H*.

47.     Upon information and belief, in their presentation of a settlement of the DFT/NFT Litigation, Defendants Geer, Kloss and O'Malley deliberately declined to disclose the consideration to be paid for the DFT's assets under the Geer Plan (more than $1 million) and the NFT-Geer Plan ($500,000) when they presented their $300,000 sham settlement of the DFT/NFT Litigation.

48.     Upon information and belief, in their presentation of a settlement of the DFT/NFT Litigation, Defendants Geer, Kloss and O'Malley deliberately declined to disclose the Beneficiaries' opposition to Geer's prior efforts to transfer DFT assets to NFT and/or Geer, despite the promise of substantially more consideration than contemplated under the "settlement" that the Defendants presented to this Court in the DFT/NFT Litigation.

49.     On February 20, 2019, in the course of granting the Beneficiaries' Emergency Motion to Dismiss the Chapter 11 Case, Judge Deller determined that case must be dismissed because the DFT is not a business trust. *Murphy v. Bernstein (In re Dille Family Tr.)*, 598 B.R. 179, 197-98 (Bankr. W.D. Pa. 2019).

50.     In that same published decision, Judge Deller found that:

    a.  Geer had previously "stated that a 'trust is not a legal entity' but rather is a fiduciary relationship.'" *Murphy v. Bernstein (In re Dille Family Tr.)*, 598 B.R. 179, 197 (Bankr. W.D. Pa. 2019);

    b.  Geer "admitted that 'the Trust has no independent legal existence and therefore jurisdiction must exist over the Trustee [Ms. Geer] personally.'" *Id. citing Motion to Dismiss Complaint* at p. 5 (filed at ECF No. 15 at Case No. CV 15-05880-R (C.D. Cal. 2015)); and

    c.  Geer had further acknowledged that "the Dille Family Trust 'lacks the capacity to sue and be sued…" *Id.* at 197.

51.     **The "*First OC Case*."**  On February 20, 2019, *immediately after* Judge Deller issued the decision dismissing the Chapter 11 Case, Geer, Herman and HG once again averred that the DFT is a "business trust," in her Complaint in Declaratory Judgment in the Orphans' Court Division of the Court of Common Pleas of Lawrence County, Pennsylvania (case no. 18 of 2019, O.C.).  A true and correct copy of the Complaint from the First OC Case is attached hereto as *Exhibit I*.

52.     On March 13, 2019, the Beneficiaries removed the First OC Case to the United States District Court for the Western District of Pennsylvania (case no. 19-cv-00274-MRH).

53.     On April 10, 2019, the Beneficiaries served a Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 11(c)(2) because Geer's counsel's (in that case, Herman) had alleged claims and legal contentions in the Complaint in the First OC Case, which were entirely unsupported by law or any nonfrivolous argument for extending, modifying or reversing existing law or establishing new law.  For instance:

> d.  In spite of Judge Deller's contrary determination, Geer/Herman contended that the DFT was a business trust.  *Exh I*, ¶ 9;
>
> e.  Despite Judge Deller's contrary determination, Geer/Herman contended that the situs of the DFT was Pennsylvania.  *Exh I*, ¶ 4; and
>
> f.  Without any legal basis, Geer/Herman contended that the Beneficiaries owed a fiduciary duty to the DFT.  *Exh I*, ¶¶ 10, 14.

54.     On April 12, 2019—*only two days* after receiving the Beneficiaries' Rule 11 Motion—Geer and her new attorney, Sneath, voluntarily dismissed the First OC Case.

55.     As reflected in Geer's agreement to engage Sneath, attached hereto as *Exhibit J*, Sneath ostensibly agreed to represent *both* "Louise Geer, Trustee, Dille Family Trust" *and* "Louise Geer."  *Exh. J*, p. 4.

56.     However, pursuant to Sneath's engagement agreement, Geer was "personally responsible for payment of all legal fees, expenses and retainer."  *Id.* at 1.  Moreover, Geer memorialized her representation to Sneath in their engagement agreement that "no funds from the Dille Family Trust [would] be used to pay" his fees or expenses "unless and until there is a court order" permitting such payment.  *Id.*

57.     As reflected in the records of Geer's payments to Sneath, attached hereto as *Exhibit K*, Geer's professional liability insurer paid at least $55,787.46 of Geer's legal fees to Sneath.

58.     **The "*Second OC Case*."**  Then, on April 17, 2019—*only five days* after her voluntary dismissal of the First OC Case—Geer, through her attorney Sneath, filed a second action

in Orphans' Court, this time on behalf of the Dille Family Trust (O.C., Lawrence, case no. 43 of 2019).

59.    The Beneficiaries believe and therefore aver that the Defendants expected that the Second OC Case would be a vehicle to distribute funds from their sham settlement and then dissolve the DFT, thus closing the final chapter of their scheme.

60.    Geer and certain of her co-defendants contended that the Beneficiaries had not been entitled to receive a copy of their sham settlement agreement.  However, on December 18, 2019, Judge Acker of the Orphans' Court of Lawrence County, Pennsylvania in the Second OC Case—after *in camera* review of the settlement agreement and related documents—issued an Order on December 17, 2019, directing that unredacted copies thereof be provided to the Beneficiaries.  A copy of that Order is attached hereto as *Exhibit L.*

61.    After that, Sneath argued that the Beneficiaries should be subject to a restrictive protective order.  However, Judge Acker once again disagreed and, on January 23, 2020, entered an Order denying the Motion.

62.    Thus, the Beneficiaries only learned in late December 2019 of the terms of the fraudulent settlement, its accompanying Asset Purchase Agreement, the assignment of DFT's copyright(s) and Geer's purported, albeit illegal, authorization of an assignment of all DFT causes of action, choses in action and all of its books and records to its nemesis, NFT.

63.    Importantly, Geer produced those materials only in response to an Order of Court, after losing a protracted legal dispute.  *Exh. L.*

64.    On February 7, 2020, Judge Acker entered an Order scheduling a hearing "to determine whether or not Attorney Louise Geer is the legitimate and lawful Trustee of the Dille Family Trust."

**B.**   **Geer Has Never Been Appointed Trustee of the DFT.**

65.   Geer has never properly, formally or validly been appointed as trustee of the DFT.

66.   Because the DFT trust instrument is silent on the method of appointment of a trustee other than a corporate trustee, court approval would have had been required for Geer to become trustee of the DFT.   *See* Cal. Prob. Code § 15660(d).

67.   Geer has admitted that no court has ever authorized her appointment, including the courts of California, Illinois or Pennsylvania.  A copy of Geer's January 14, 2020, Responses to Requests for Admissions is attached hereto as *Exhibit M*.

**C.**   **If Geer Had Been Trustee of the DFT, the Beneficiaries Unanimously Removed Her Prior to the Fraudulent Settlement.**

68.   If the Beneficiaries could have appointed Geer as trustee of the DFT without court intervention, then they had been empowered to remove her in the same fashion.

69.   Notwithstanding Geer's non-appointment, on or about August 26, 2018, the Beneficiaries gave written notice to Geer of their unanimous removal of her as trustee of the DFT and demanded that she cease all involvement with DFT.

70.   Despite the Beneficiaries' issuance of written notice of her removal, Geer illegally continued to purport to act on behalf of the DFT.

71.   The Beneficiaries again issued written notice of her removal as trustee to Geer on February 22, 2019, re-confirmed her unanimously removal and notifying her of a telephonic meeting regarding the DFT on February 25, 2019.  Copies of the Beneficiaries' notices to Geer dated August 26, 2018 and February 22nd and 25th of 2019 are attached hereto as *Exhibit N*

72.   At the February 25, 2019, telephonic meeting, the Beneficiaries, by resolution (again) re-confirmed their unanimous removal of Geer as trustee of the DFT.

**D.      If Geer Had Been Trustee of the DFT, the Beneficiaries Removed All Assets from the DFT Prior to Geer's Purported Fraudulent Settlement.**

73.      Significantly, under the terms of The Dille Family Trust, the Beneficiaries are accorded the unfettered right to remove the entirety of their respective shares of trust property upon attaining the age of 35.  Copies of the Beneficiaries' removal notices are attached hereto as *Exhibit O*.

74.      Ms. Williams and Mr. Dille, both being over the age of 35, exercised their right to remove all property from the DFT as of February 20, 2019.

75.      Because the Beneficiaries' interests in the DFT comprise 100% of its beneficial interests, their removal of their interests left the DFT with no assets.

76.      Consequently, neither Geer nor David Kloss or their respective law firms could have conveyed any property of the DFT after February 20, 2019, as there was no property then remaining to convey.

**E.      Presentation of the Fraudulent Settlement of the DFT/NFT Litigation.**

77.      On November 15, 2018, Herman represented to the court in the DFT/NFT Litigation that, as a result of his status as a purported creditor of the DFT,

> …there exists **a conflict of interests** [and] it is **absolutely impossible,** pursuant to the Rules of Professional Responsibility **for Daniel I. Herman, Esquire and the law firm of Geer and Herman, P.C. to be involved in the instant litigation.**

*NFT Litigation*, doc. no. 177, p. 3 (emphasis added).

78.      On November 21, 2018, Justin Kloss, Esq. (*i.e.*, a partner in the same law firm as David Kloss) moved to withdraw his appearance from the DFT/NFT Litigation, as well as the appearances of his law partner, Vincent LoTempio, Esq. and their law firm, Kloss, Stenger &

LoTempio. *DFT/NFT Litigation*, doc. no. 179. In his Motion, Justin Kloss represented that the law firm:

> has a significant monetary claim against the Dille Family Trust for unpaid costs of representation. The movant herein believes this creates **a conflict of interest, of which would be impossible to resolve while still remaining as counsel.**

*Id.* at p. 2, ¶ 7.

79.     On February 26, 2019, just prior to the settlement conference, Herman sponsored the admission of David Kloss, *pro hac vice*, in the DFT/NFT Litigation. *DFT/NFT Litigation*, doc. no. 186. That *pro hac* Motion is deeply disturbing in view of:

a.  Herman's prior representation that he held an **absolutely disqualifying conflict of interests** [*NFT Litigation*, doc. no. 177, p. 3]; and

b.  Justin Kloss's representation that Kloss, Stenger & LoTempio held a **conflict of interests that was impossible to resolve**. DFT/NFT Litigation, doc. no. 179, p. 2.

80.     Following David Kloss's improper and unethical admission *pro hac vice* into the DFT/NFT Litigation, he and O'Malley reported the sham settlement to Judge Beetlestone during a February 28, 2019, settlement conference. A copy of the transcript of that proceeding is attached hereto as *Exhibit P.*

81.     Kloss, Stenger & LoTempio—with its impossible to resolve conflict with the Dille Family Trust—took receipt of the proceeds from the sham settlement in New York.

82.     On March 4, 2019, having no knowledge of the fraud committed upon it, this Court entered an Order dismissing the DFT/NFT Litigation with prejudice—all without Beneficiaries' knowledge, authorization or approval—and all grounded in a sham settlement that was antithetical to the Beneficiaries' interests.

**Discovery of the Fraud**

83.    On May 23, 2019, the Beneficiaries filed a Motion to Set Aside Judgment entered in the DFT/NFT Litigation, based on their suspicion of Geer's fraud upon this Court.

84.    On August 21, 2019, the Court denied the Beneficiaries' Motion to Set Aside Judgment without prejudice, noting that fraud upon the court must be addressed in a new, separate action.

85.    In the course of their continued litigation in other courts, the Beneficiaries have uncovered overwhelming evidence of Defendants' fraud upon the Court.

86.    Much of that evidence came directly from certain of the Defendants' statements in other courts.  For instance, on September 10, 2019, during a hearing upon a Motion to Reopen the Chapter 11 Case, O'Malley (NFT's counsel) contended that "the **settlement was a confidential settlement**."  A copy of the transcript from that hearing is attached hereto as *Exhibit Q* and the referenced quote appears at p. 24:2-3 (emphasis added).

87.    It was not until November 15, 2019, when the Beneficiaries obtained a copy of the transcript from the February 28, 2019, settlement conference in the DFT/NFT Litigation that the Beneficiaries would discover that O'Malley's representations to the Courts presiding over the Chapter 11 Case and the DFT/NFT Litigation are hopelessly inconsistent.  When presenting that same settlement to Judge Beetlestone on February 28, 2019, O'Malley had represented:

> MR. O'MALLEY:        Well, we would like to get the order, I guess since there's been so much back and forth we would like to put it on the record. **It's not a confidential settlement**.

*Exh. Q*, p. 3:10-13 (emphasis added).

88.    Sneath, purporting to represent the DFT, also participated in the September 10, 2019 hearing in the Chapter 11 Case, engaging in the following colloquy with Judge Deller:

> THE COURT:   What are the terms and conditions of that settlement?
>
> MR. SNEATH:  Your Honor, <u>I don't know</u>.  I was not involved in the settlement.  **<u>I only know what was on the docket</u>**….
>
> THE COURT:   But, you don't know the terms and conditions of that settlement?
>
> MR. SNEATH:  <u>I do not</u>.   It was a confidential settlement, Your Honor, and I don't -- <u>all I know</u> is that the case was settled, money was paid, that money is being held by a law firm in a trust account, and they have not, I am told, they have not been served with a writ of execution or interrogatories or anything….

*Exh. Q*, pp. 13:10-14; 13:25-14:7 (emphasis added).

89.    But a short time later when his representation was called into doubt, Sneath inconsistently reported:

> MR. SNEATH:  Your Honor, I can only tell you what I -- by the way, I just want to clear up one thing.  Clearly, my client, the Dille Family Trust, is aware of the terms of the settlement.  <u>We are not unaware of the terms of the settlement</u>.

*Id.* at p. 29:13-16 (emphasis added).

90.    Ultimately, Sneath would abandon altogether his original claim that he knew nothing of the settlement:

> THE COURT:   Well, Mr. Sneath, you correct me if I'm wrong.  My interpretation of the colloquy that you and I just had here in open court was that you were just explaining to the Court what you understood with respect to what has been made known to you in a public way about what's in the settlement.
>
>    You weren't attempting to characterize all of the settlement because <u>you just simply haven't read the document</u> and you don't know exactly all of the bells and whistles that are contained in the same, <u>is that right</u>?
>
> MR. SNEATH:  <u>Essentially</u>.  My client was a party to the settlement.  I am not unaware as to the terms of the settlement.  I don't -- I was

> not the person who drafted it.  It is not just a simple, you know, we
> release you from everything thing [sic] because there are
> associated details that I don't want to try to characterize for the
> Court.  I don't see the point of us here today --
>
> THE COURT:    But, **have you read the settlement agreement**?
>
> MR. SNEATH:  **Yes**.

*Id.* at pp. 32:21-33:14 (emphasis added).

91.    On October 25, 2019, in the Second OC Case, Sneath once again appears to have misrepresented the presentation of the Defendants' sham settlement, contending before the Orphans' Court of Lawrence County (Acker, J.) that:

> MR. SNEATH:  …Those negotiations under the federal rules are --
> are confidential, and **the settlement was confidential**.  In fact, the
> **judge in Philadelphia**, the Eastern District judge, she **doesn't even
> know the terms** of the settlement….

A copy of the transcript from that hearing is attached hereto as *Exhibit R* and the quoted portion appears at pp. 22:1-4 (emphasis added).

92.    Evidently, Sneath's representation to Judge Acker in the Second OC Case had been false since O'Malley had presented the settlement to Judge Beetlestone, describing its contents. *See Exh. P*, p. 3:10-13.

93.    Moreover, upon information and belief, Sneath himself was responsible for the Confidentiality and Non-Disclosure Agreement, ostensibly between and among the DFT, NFT and the Buck Rogers Company.  As reflected in that document, which is attached hereto as *Exhibit U* (the "***NDA***"), Defendant Geer appears to have signed it on April 8, 2019, only 22 days after she entered into her engagement agreement with Sneath.  *Exhs. J* and *U*.

94.    On December 17, 2019, the court in the Second OC Case ordered Geer to turn over unredacted copies of the settlement documents, which she produced on December 31, 2019.  Thus,

it was not until the final day of 2019 that the Beneficiaries learned of the Defendants written misrepresentations in the settlement documents, their post-hoc efforts to conceal the settlement and its terms from the Beneficiaries and that the Defendants committed a fraud upon this Court— which extended into other courts—attended by misrepresentations to judges in open court and failures to disclose material facts unknown to those courts.

95.    Under the APA, NFT agreed to pay only a fraction of the amounts contemplated under the Geer Plan (more than $1,000,000) or the NFT-Geer Plan ($500,000).  *See Exhs. F* and *G*.

96.    Despite the drastically reduced consideration of $300,000, NFT hoped to receive considerably more than it could have through a chapter 11 plan.  NFT angled for the benefits of dismissal of the DFT/NFT Litigation and DFT's objections to its trademark claims, as well as generous indemnification provisions and the purported right to bring any and all causes of action of the DFT.

97.    There can be no question that the DFT would have been in a considerably better position had the litigation not been settled through the Defendants' fraud upon the court.  NFT had no claims against the DFT and the "settlement" would result in far greater harm to the DFT and its Beneficiaries than the $300,000 now held in trust by KSL (despite its admitted conflict of interests with the DFT).

98.    Upon information and belief, Ms. McDevitt has granted herself a $300,000 lien upon the assets NFT claims to have acquired through the Defendants' fraud upon the court.

99.    On November 27, 2019, Geer filed her (i) Petition for Adjudication/Statement of Proposed Distribution; and (ii) First and Partial Account in the Second OC Case.  From those filings the Beneficiaries learned for the first time that Geer claimed to have lent $301,500 to the

DFT sometime after the dismissal of the Chapter 11 Case on February 20, 2019 (*i.e.*, $1,500 more than the amount of the purported settlement proceeds from NFT).

100.    On January 23, 2020, in the Second OC Case, Judge Acker further ordered that Geer respond to key interrogatories and requests for production of documents on or before March 4, 2020.

101.    Consequently, the Beneficiaries did not learn many of the major components of the Defendants' fraud upon the court until very recently—and they are continuing to discover more evidence of that fraud as the litigation continues, including that Geer engaged Sneath to represent her personally and paid him, at least in part, from the defense costs advanced by her professional liability insurer.

102.    Geer's retention of Sneath as her attorney and Sneath's compensation from Geer's professional liability insurance becomes all the more shocking when one considers that Geer has sought to "recover" Sneath's legal fees from the DFT, ahead of its other creditors.

103.    This action would be timely under Rule 60(b), since it has been filed within one year from the date on which the fraudulent judgment constituting fraud on the court was entered.

104.    However, a remedy for fraud upon the court is not based on Rule 60(b) but, instead, upon the inherent power of all federal courts to vacate judgments obtained by fraud.

105.    Moreover, the doctrine of *laches* is inapplicable since this case has been filed within a reasonable time from when the Beneficiaries discovered or could have discovered the specific terms of the fraudulent settlement upon which the judgment was based, which first occurred in late December 2019, in the Second OC Case after Judge Acker directed Geer to turn over the settlement documents and denied her repeated requests for a protective order.

106.    Upon information and belief, for that improper purpose, Geer (purporting to act on behalf of the DFT), NFT and BRC entered into a Confidentiality and Non-Disclosure Agreement. *Exh. U*.

107.    After the Defendants' representation to this Court that the "settlement" had *not been confidential*, this Court should regard the NDA with suspicion.  That suspicion should be elevated since the NDA came nearly *two months after execution* of the "settlement" documents, and without any additional consideration.

108.    The SA incorporates an exhaustive release of the Defendants and related parties, including the beneficiaries of NFT—however, the SA provides no similar release for the DFT's Beneficiaries.  *Exh. Q*, p. 2.

109.    Upon information and belief, the Defendants *anticipated* that the Beneficiaries would seek redress for the Defendants' fraud upon the Court in the DFT/NFT Litigation, as evidenced by at least three provisions of the SA and APA.

110.    First, the APA provided for indemnification from DFT for the Beneficiaries' claims against NFT, Ms. McDevitt, Mr. McDevitt, the beneficiaries of the NFT and their attorneys against the Beneficiaries' claims.  *Exh. R*, pp. 5-6.

111.    Second, the APA provided for the dissolution of DFT through a proceeding in Orphans' Court.  *Exh. R*, p. 6.

112.    Third, the Defendants attempted to assign the Beneficiaries' right to bring their claims to NFT itself through the SA:

> With this settlement agreement no other party than the Nowlan Family Trust shall have any right to bring or asset any cause of action against any party for any reason except the parties released herein.

*Exh. Q*, p. 2.

113.     Notably, the Defendants did not mince their words on the issue of whether NFT would indemnify the DFT if the Beneficiaries discovered their sham—it expressly rejects any interpretation that would lead to that outcome. *Exh. Q*, p. 3, § 2(b).

114.     Upon information and belief, Defendant Kloss, an attorney and officer of the court, acting for himself and KSL, harmed the interests of the DFT and its Beneficiaries by, *inter alia*:

    a.  Representing that the parties had validly settled their disputes when, in fact, no one had advised the Beneficiaries of the purported settlement, the terms of which were substantially similar to the sale transaction that Geer and NFT had unsuccessfully attempted together during the Chapter 11 Case;

    b.  Representing, through his presentation of the SA that NFT's intellectual property rights were superior to those of DFT, despite consistent arguments to the contrary throughout the litigation;

    c.  Representing that the SA had been in the interests of the DFT and its Beneficiaries, despite that it would leave nothing for the DFT and generate new expenses in excess of the settlement amount—all the while NFT had *no claims* against the DFT and, thus the DFT had no litigation risk;

    d.  Failing to disclose that he held an *admitted* conflict of interests with the DFT that was impossible to resolve;

    e.  Failing to disclose that his *pro hac* sponsor, Herman held an *admitted* conflict of interests with the DFT that made it impossible for him to represent it;

    f.  Failing to disclose that the Beneficiaries had objected to the terms of the sham settlement in an earlier iteration;

    g.  Failing to disclose that the Beneficiaries had terminated Geer as trustee of the DFT, if she had ever held that position;

    h.  Failing to disclose that the Beneficiaries had already removed 100% of their interests in the DFT, together comprising 100% of the DFT's assets;

    i.  Failing to disclose that Geer had never been properly appointed trustee of the DFT; and

    j.  Failing to disclose that his law firm—which had admitted that it held a conflict of interests with the DFT—would take possession of the proceeds of the sham settlement, while continuing to claim that the DFT was indebted to it.

115.    Upon information and belief, Defendant O'Malley, an attorney and officer of the court, acting for himself and his clients, NFT, BRC, Mr. McDevitt, and Ms. McDevitt, harmed the interests of the DFT and its Beneficiaries by, *inter alia*:

   a.   Representing that the parties had validly settled their disputes when, in fact, no one had advised the Beneficiaries of the purported settlement, the terms of which were substantially similar to the sale transaction that Geer and NFT had unsuccessfully attempted together during the Chapter 11 Case;

   b.   Representing through the APA that no actions, suits, claims, investigations, hearings or proceedings of any time existed that might affect NFT's ability to close the transactions contemplated under the APA, despite his actual knowledge that

        i.    of his own prior representation in the same case that "Louise Geer Does Not Have Standing to Assert A Claim on Behalf of The Dille Family Trust Because She Was Improperly Appointed as Successor Trustee" [*NFT Litigation*, doc. no. 106-3, p. 2]

        ii.   that the Beneficiaries had terminated Geer as trustee of the DFT, if she had ever been trustee; and

        iii.  that the Beneficiaries had removed all of the assets from the DFT;

   c.   Representing, through his presentation of the settlement agreement that NFT's intellectual property rights were superior to those of DFT, despite substantial evidence to the contrary;

   d.   Representing that the settlement agreement had been in the interests of the parties, despite that it would leave nothing for the DFT and generate new expenses in excess of the settlement amount—all the while NFT had *no claims* against the DFT and, thus the DFT had no litigation risk;

   e.   Representing that the reason for seeking court approval of the settlement had been because "there had been so much back and forth" when the actual reason had been to extend the Court's imprimatur to a fraudulent settlement, in an effort to further impair the rights of the Beneficiaries;

   f.   Failing to disclose that the Beneficiaries had objected to the terms of the sham settlement in an earlier iteration;

   g.   Failing to disclose that the Beneficiaries had terminated Geer as trustee of the DFT, if she had ever held that position;

   h.   Failing to disclose that the Beneficiaries had removed 100% of their interests in the DFT, together comprising 100% of the DFT's assets; and

      i.   Misrepresenting to Judge Acker and Judge Deller that the SA had been confidential, despite his contrary representation to Judge Beetlestone.

116.    Upon information and belief, Defendant Sneath, acting for himself and his clients, Geer, Herman and GH, harmed the interests of the DFT and its Beneficiaries by, *inter alia*

    a.   Representing to Judge Deller that he did not know the terms of the SA;

    b.   Representing to Judge Deller that the SA had been confidential;

    c.   Representing to Judge Acker that the terms of the SA had been kept secret from Judge Beetlestone; and

    d.   Preventing the Beneficiaries from obtaining documents and information relevant to the Defendants' fraud upon the Court.

117.    Upon information and belief, Defendant Herman, an attorney and officer of the court, acting for himself, Geer and GH, harmed the interests of the DFT and its Beneficiaries by, *inter alia*:

    a.   Failing to disclose that he held an *admitted* conflict of interests with the DFT that disqualified him from moving to admit another attorney *pro hac vice*;

    b.   Failing to disclose that his *pro hac* sponsee, David Kloss held an *admitted* conflict of interests with the DFT that made it impossible for him to represent it;

    c.   Failing to disclose that the Beneficiaries had objected to the terms of the sham settlement in an earlier iteration;

    d.   Failing to disclose that the Beneficiaries had terminated Geer as trustee of the DFT, if she had ever held that position;

    e.   Failing to disclose that the Beneficiaries had removed 100% of their interests in the DFT, together comprising 100% of the DFT's assets; and

    f.   Failing to disclose that Geer had never been properly appointed trustee of the DFT.

118.    Upon information and belief, Defendant Geer, an attorney and officer of the court, acting for herself, Herman and GH, harmed the interests of the DFT and its Beneficiaries by, *inter alia*:

a.  Representing that the parties had validly settled their disputes when, in fact, no one had advised the Beneficiaries of the purported settlement, the terms of which were substantially similar to the sale transaction she and NFT had unsuccessfully attempted together during the Chapter 11 Case;

b.  Representing, through her execution and presentation of the SA that NFT's intellectual property rights were superior to those of DFT, despite her fiduciary duty to the DFT and consistent arguments to the contrary throughout the litigation;

c.  Representing that the SA had been in the interests of the DFT and its Beneficiaries, despite that it would leave nothing for the DFT and generate new expenses in excess of the settlement amount—all the while NFT had *no claims* against the DFT and, thus the DFT had no litigation risk;

d.  Failing to disclose that she had failed to keep the Beneficiaries apprised of her settlement efforts;

e.  Failing to disclose that Herman had *admitted* that Geer and Herman, P.C. held conflict of interests with the DFT that made it impossible for Geer to serve as its trustee;

f.  Failing to disclose that the Beneficiaries had objected to the terms of the sham settlement;

g.  Failing to disclose that the Beneficiaries had terminated her as trustee of the DFT, if she had ever held that position;

h.  Failing to disclose that the Beneficiaries had removed 100% of their interests in the DFT, together comprising 100% of the DFT's assets;

i.  Failing to disclose that she had never been properly appointed trustee of the DFT;

j.  Failing to disclose that she had, or intended to extend loans to the DFT, the proceeds of which she would provide no information on, and that she would seek repayment of her alleged loans ahead of other creditors of the DFT; and

k.  Failing to disclose that she would retain a benefit from the DFT in the forms of continuing beneficial interests in its assets, including but not limited to a license agreement for the benefit of an entity or entities in which she has an interest.

## COUNT I – FRAUD UPON THE COURT
## BENEFICIARIES V. DEFENDANTS GEER, KLOSS, AND O'MALLEY

119.    The preceding paragraphs are incorporated by reference.

120.    On February 28, 2019, Defendants Kloss and O'Malley represented to the Court in the DFT/NFT Litigation that the DFT and NFT had agreed to settle the DFT/NFT Litigation.

121.    Upon information and belief, Defendants Geer, Kloss, and O'Malley acted in concert to carry out an intentional fraud upon the Beneficiaries and this Court.  Two of the instruments of that fraud, the Settlement Agreement (the "*SA*") and Asset Purchase Agreement (the "*APA*") that Defendants Geer, Kloss, and O'Malley presented in the DFT-NFT Litigation, are attached hereto as *Exhibits S* and *T*, respectively.

122.    Defendants Kloss and O'Malley were officers of the court when they represented that they had settled the DFT/NFT Litigation on February 28, 2019.

123.    By presenting herself as trustee of the DFT, Defendant Geer was also an officer of the court when she executed the SA and APA on February 28, 2019, which Geer intended and understood would be presented to the Court presiding over the DFT/NFT Litigation, purportedly settling that matter on behalf of the DFT.

124.    As officers of the court, Defendants Geer, Kloss, and O'Malley had an obligation, not only to submit truthful information to the Court presiding over the DFT/NFT Litigation, but also to disclose to the court any material information of which they were aware.

125.    Upon information and belief, Defendants Geer, Kloss, and O'Malley hurriedly sought court approval of the SA and APA because they *knew* that the DFT lacked the capacity to sue or be sued.

126.    On February 20, 2019, in a published opinion, Judge Deller acknowledged Geer's prior admission "the Trust has no independent legal existence and therefore jurisdiction must exist

over the Trustee." *Murphy v. Bernstein (In re Dille Family Tr.)*, 598 B.R. 179, 197-98 (Bankr. W.D. Pa. 2019) *citing Reply Memorandum in Support of Motion to Dismiss Plaintiff's Complaint* at pp. 6, 9, and 11 (filed at ECF No. 23 at Case No. CV 15-05880-R (C.D. Cal. 2015)).

127.   Stunningly, Kloss' law firm and co-defendant, KSL filed a notice of appeal from Judge Deller's February 20, 2019 decision.   A copy of the first notice of that appeal is attached hereto as *Exhibit V* and reflects that Herman (who is also Geer's spouse, law partner and co-Defendant) entered that notice of appeal on behalf of "Kloss, Stenger, & LoTempio, Creditor." *Exh. V*, p. 1.

128.   Given KSL's decision to engage Herman as its attorney to appeal the dismissal of the Chapter 11 Case, it is difficult to imagine that Kloss had not known of Judge Deller's determination that the DFT is not a business trust.

129.   Joining KSL in its appeal of Judge Deller's decision was "Louise A. Geer, Creditor." *Id.* (emphasis added).

130.   Given Geer's decision—albeit, in her purported capacity as a creditor of the DFT—to engage Herman as her attorney to appeal the dismissal of the Chapter 11 Case, it is difficult to imagine that Geer had not known of Judge Deller's determination that the DFT is not a business trust.

131.   Upon information and belief, Defendants Geer, Kloss, and O'Malley hurriedly sought court approval of the SA and APA because of they *knew* that Geer lacked authority to bind the DFT.

132.   Despite the actual knowledge of Defendants Geer, Kloss, and O'Malley that Geer lacked authority to bind the DFT, each failed to disclose that material information to the Court.

133. Upon information and belief, Defendants Geer, Kloss, and O'Malley hurriedly sought court approval of the SA and APA because of they *knew* the DFT lacked the capacity to sue or be sued, each having read the published opinion of Judge Deller, which acknowledged Geer's prior admission "the Trust has no independent legal existence and therefore jurisdiction must exist over the Trustee." *Id.*

134. Despite the actual knowledge of Defendants Geer, Kloss, and O'Malley that the DFT lacked the capacity to sue or be sued, each failed to disclose that material information to the Court.

135. Upon information and belief, Defendants Geer, Kloss, and O'Malley hurriedly sought court approval of the SA and APA because of they *knew* the DFT had *not* appropriately been a party to this lawsuit, since all of the Defendants *knew* that the DFT lacked the capacity to sue or be sued.

136. Despite the actual knowledge of Defendants Geer, Kloss, and O'Malley that the DFT had *not* appropriately been a party to this lawsuit, each failed to disclose that material information to the Court.

137. Geer claimed throughout the DFT/NFT Litigation—which she voluntarily and improperly commenced in the name of the DFT, as a purported "business trust" plaintiff against NFT—that it had been entitled to a favorable ruling on all of its claims. Nevertheless, the SA includes a purported acknowledgment by the DFT that "NFT's intellectual property rights are superior to those of DFT." *Exh. S*, pp. 1, 3.

138. Upon information and belief, Defendants Geer, Kloss, and O'Malley incorporated that false "acknowledgment" of NFT's superior rights into the SA to intentionally mislead the Court, in furtherance of a fraud upon the Court.

139.    That conclusion is supported by the Beneficiaries' written notices removing Geer as trustee (if she had ever been trustee) and their removal of all of the assets of the DFT. *Exh. O.*

140.    Moreover, O'Malley cannot deny his actual knowledge that Geer lacked authority to bind the DFT, since he argued long ago that "Louise Geer Does Not Have Standing to Assert A Claim on Behalf of The Dille Family Trust Because She Was Improperly Appointed as Successor Trustee." *DFT/NFT Litigation*, doc. no. 106-3, p. 2.

141.    Upon information and belief, Defendants Geer, Kloss, and O'Malley *knew* the Beneficiaries would oppose the terms of the SA since they opposed the Geer-NFT Plan presented to the Bankruptcy Court.

142.    Despite the actual knowledge of Defendants Geer, Kloss, and O'Malley that the Beneficiaries would oppose the terms of the SA, each failed to disclose that material information to the Court.

143.    Upon information and belief, Defendants Geer, Kloss, and O'Malley *knew* the Beneficiaries had not been aware of their purported settlement of the DFT-NFT Litigation.

144.    Despite the actual knowledge of Defendants Geer, Kloss, and O'Malley that the Beneficiaries had not been aware of their purported settlement of the DFT-NFT Litigation, each failed to disclose that material information to the Court.

145.    Upon information and belief, Defendants Geer, Kloss, and O'Malley *knew* that Defendant Kloss held unwaived conflicts of interests with the DFT.

146.    Despite the actual knowledge of Defendants Geer and Kloss, and O'Malley that Defendant Kloss held unwaived conflicts of interests with the DFT, each failed to disclose that material information to the Court.

147.    Upon information and belief, Defendants Geer, Kloss, and O'Malley *knew* that Defendant Geer held unwaived conflicts of interests with the DFT.

148.    Despite the actual knowledge of Defendants Geer, Kloss, and O'Malley that Defendant Geer held unwaived conflicts of interests with the DFT, each failed to disclose that material information to the Court.

149.    Defendants Geer, Kloss, and O'Malley presented the APA, together with all of its representations and warranties, to the Court overseeing the DFT-NFT Litigation. *Exh. P.*

150.    By presenting the APA to the Court overseeing the DFT-NFT Litigation, Defendants Geer, Kloss, and O'Malley knowingly mislead that Court with the misrepresentation that the "Seller has authority to convey good and marketable title to all of the Assets." *Id*. at 4.

151.    By presenting the APA to the Court overseeing the DFT-NFT Litigation, Defendants Geer, Kloss, and O'Malley knowingly mislead that Court with the misrepresentation that "All information set forth in the Schedules is materially true, correct, complete and set forth in a manner that is not misleading as of the date of this Agreement." *Id*. at 4.

152.    By presenting the APA to the Court overseeing the DFT-NFT Litigation, Defendants Geer, Kloss, and O'Malley knowingly mislead that Court with the misrepresentation that the "Seller or Seller's designated Affiliate, has all requisite power and authority to enter into this Agreement and to perform its respective obligations hereunder." *Id*. at 5.

153.    By presenting the APA to the Court overseeing the DFT-NFT Litigation, Defendants Geer, Kloss, and O'Malley knowingly mislead that Court with the misrepresentation that "prior to Closing, the execution, delivery and performance of this Agreement will have been duly and validly authorized and ratified by all necessary corporate and other action on the mart of

the Seller." *Id*. at 5.  In fact, because of the foregoing facts, those Defendants had already known that representation would be impossible.

154.    By presenting the APA to the Court overseeing the DFT-NFT Litigation, Defendants Geer, Kloss, and O'Malley knowingly mislead that Court with the misrepresentation that "no other proceeding on the part of the Seller [would be] necessary to authorize this Agreement and the transactions contemplated hereby." *Id*. at 5.  In fact, only days later, both Geer and Kloss would file their Notice of Appeal in the Chapter 11 Case.  *Exh. V*.  Moreover, Geer had by that time *already commenced* the First OC Case to facilitate her fraud.

155.    By presenting the APA to the Court overseeing the DFT-NFT Litigation, Defendants Geer, Kloss, and O'Malley knowingly mislead that Court with the misrepresentation of both NFT and Geer that "There are no actions, suits, claims, investigations, hearings, or proceedings of any type pending at law or in equity that might affect Buyer's ability to close the transactions contemplated hereby." *Id*. at 5-6 (¶¶ 3.5 and 4.3).  In fact, only days later, both Geer and Kloss would file their Notice of Appeal in the Chapter 11 Case.  *Exh. V*.  Moreover, Geer had by that time *already commenced* the First OC Case to facilitate her fraud.

156.    By presenting the APA to the Court overseeing the DFT-NFT Litigation, Defendants Geer, Kloss, and O'Malley knowingly mislead that Court with the misrepresentation of both NFT and Geer that "Each party hereto warrants and represents that such party has been afforded the opportunity to be represented by counsel of its choice in connection with the execution of this Agreement and has had ample opportunity to read, review and understand the provisions of this Agreement." *Id*. at 9.  In fact, those Defendants *knew* that the Beneficiaries had not been advised of the purported settlement at all—and they also *knew* that the DFT is nothing more than a fiduciary relationship between the Beneficiaries and the trustee of the DFT.

157.   By presenting the APA to the Court overseeing the DFT-NFT Litigation, Defendants Geer, Kloss, and O'Malley knowingly mislead that Court with the misrepresentation of both NFT and Geer that "Any notice or communication required or permitted hereunder shall be sufficiently given if sent by first class mail postage prepaid..." to Kloss for the Seller. *Id*. at 9. In fact, those Defendants *knew* that notices to Kloss would never be communicated to the Beneficiaries—and they also *knew* that the DFT is nothing more than a fiduciary relationship between the Beneficiaries and the trustee of the DFT.

158.   By presenting the APA to the Court overseeing the DFT-NFT Litigation, Defendants Geer, Kloss, and O'Malley knowingly mislead that Court with the misrepresentation of both NFT and Geer that "All of the parties have had an opportunity to investigate and evaluate the Assets being purchased, have relied on independent professional advice and, therefore, agree that the price to be paid by the Buyer for the Assets is reasonably equivalent value for the Assets." *Id*. at 9.  In fact, those Defendants *knew* that (i) the Beneficiaries had not had any such opportunity; (ii) did not have the benefit of any independent professional advice regarding the same; and (iii) that the price to be paid was not reasonably equivalent to the value of the referenced Assets—and they also *knew* that the DFT is nothing more than a fiduciary relationship between the Beneficiaries and the trustee of the DFT.

159.   Defendants Geer, Kloss, and O'Malley intentionally directed each of the foregoing acts to the Court overseeing the DFT/NFT Litigation, including those Defendants' misrepresentations and failures to disclose known material facts, intending the Court to rely upon them in furtherance of their fraud upon the Court.

160.    The Court overseeing the DFT/NFT Litigation did, in fact, rely upon the misrepresentations and failures to disclose known material facts, by Defendants Geer, Kloss, and O'Malley.

161.    As a direct and proximate result of the foregoing instances of fraud by Defendants Geer, Kloss, and O'Malley, actually deceived the Court, which dismissed the DFT/NFT Litigation.

**COUNT II – BREACH OF FIDUCIARY DUTY**
**BENEFICIARIES V. DEFENDANTS GEER, HERMAN, KLOSS, SNEATH, GH, AND KSL**

162.    The preceding paragraphs are incorporated by reference.

163.    To the extent that it is inconsistent with any other allegations herein, the Plaintiffs plead this Count as an argument in the alternative.

164.    Geer, Herman, Kloss, Sneath, GH, and KSL, as counsel or fiduciaries acting on behalf of the DFT each owed the duties of care and loyalty of a fiduciary to the DFT and its Beneficiaries, including an obligation to elevate the interests of the DFT and its Beneficiaries above their own interests. Thus, Geer, Herman, Kloss, Sneath, GH, and KSL each had an obligation to fully disclose all relevant and material information to the DFT and its Beneficiaries, and to refrain from engaging in dealings with the DFT for their own benefit and/or against the interests of the DFT and its Beneficiaries.

165.    As described herein, Geer, Herman, Kloss, Sneath, GH and KSL, each materially breached their duty as fiduciaries to act fairly, honestly, and in the best interests of the DFT and its Beneficiaries, to fully disclose and not materially omit relevant information to the DFT and its Beneficiaries, and to refrain from engaging in dealings with the DFT for their own benefit and/or against the interests of the DFT and its Beneficiaries.

166.    Geer, Herman, Kloss, Sneath, GH and KSL, as counsel or fiduciaries acting on behalf of the DFT have caused substantial damages to the DFT and its Beneficiaries, as further described herein.

167.    Geer, Herman, Kloss, Sneath, GH and KSL acted willful and with malice, intending to oppress and injure the DFT and its Beneficiaries.  Consequently, the Beneficiaries should be awarded punitive damages in an amount sufficient to (i) punish those Defendants in accordance to their wealth and assets; and (ii) deter those Defendants and other similarly situated actors from repeating such conduct in the future.

### COUNT III – CONSTRUCTIVE FRAUD/FRAUDULENT CONCEALMENT
### BENEFICIARIES V. DEFENDANTS GEER, HERMAN, KLOSS, SNEATH, GH, AND KSL

168.    The preceding paragraphs are incorporated by reference.

169.    To the extent that it is inconsistent with any other allegations herein, the Plaintiffs plead this Count as an argument in the alternative.

170.    Geer, Herman, Kloss, Sneath, GH, and KSL, as counsel or fiduciaries acting on behalf of the DFT each had a fiduciary duty to act fairly, honestly, and in the best interests of the DFT and its Beneficiaries, to fully disclose all relevant and material information to the DFT and its Beneficiaries, and to refrain from engaging in dealings with the DFT for their own benefit and/or against the interests of the DFT and its Beneficiaries.

171.    Through their omissions and failures to disclose material information as described herein, *supra*, Geer, Herman, Kloss, Sneath, GH, and KSL knowingly violated the duty that they each owed to the Beneficiaries.

172.    As a direct and proximate result of the aforementioned violations of the duties of care that Geer, Herman, Kloss, Sneath, GH, and KSL owed to the DFT and its Beneficiaries, the DFT and its Beneficiaries incurred substantial damages, as further described herein.

173.    As a further direct and proximate result of the Beneficiaries' reliance on the aforementioned representations and omissions of Geer, Herman, Kloss, Sneath, GH and KSL, those parties gained a pecuniary and litigation advantage, at the expense of the DFT and the Beneficiaries.

174.    Geer, Herman, Kloss, Sneath, GH and KSL acted willful and with malice, intending to oppress and injure the DFT and its Beneficiaries.  Consequently, the Beneficiaries should be awarded punitive damages in an amount sufficient to (i) punish those Defendants in accordance to their wealth and assets; and (ii) deter those Defendants and other similarly situated actors from repeating such conduct in the future.

### COUNT IV – NEGLIGENCE
### BENEFICIARIES V. DEFENDANTS GEER, HERMAN, KLOSS, SNEATH, GH, AND KSL

175.    The preceding paragraphs are incorporated by reference.

176.    Geer, Herman, Kloss, Sneath, GH, and KSL, as counsel or fiduciaries acting on behalf of the DFT each had a fiduciary duty to act fairly, honestly, and in the best interests of the DFT and its Beneficiaries, to fully disclose all relevant and material information to the DFT and its Beneficiaries, and to refrain from engaging in dealings with the DFT for their own benefit and/or against the interests of the DFT and its Beneficiaries.

177.    Through their acts, omissions, and failures to disclose material information as described herein, *supra*, Geer, Herman, Kloss, Sneath, GH, and KSL failed to meet the standard of care that they each owed to the Beneficiaries.

178.    As a direct and proximate result of the aforementioned failure to meet the standard of care that Geer, Herman, Kloss, Sneath, GH, and KSL owed to the DFT and its Beneficiaries, the DFT and its Beneficiaries incurred substantial damages, as further described herein.

### COUNT V – CONSPIRACY TO BREACH FIDUCIARY DUTY AND TO COMMIT CONSTRUCTIVE FRAUD/FRAUDULENT CONCEALMENT BENEFICIARIES V. ALL DEFENDANTS

179.    The preceding paragraphs are incorporated by reference.

180.    To the extent that it is inconsistent with any other allegations herein, the Plaintiffs plead this Count as an argument in the alternative.

181.    The Defendants agreed to work in concert and with the intent to commit an unlawful act, or an otherwise lawful act by unlawful means, for the common purpose of presenting their sham settlement the Court in the DFT/NFT Litigation as a vehicle to deprive the Beneficiaries of the value of their interests in the DFT while conferring benefits upon the Defendants, and to effectuate that shared purpose, the Defendants cooperated to conceal the relevant details of that sham settlement from the Beneficiaries of the DFT, in violation of the fiduciary duties that Defendants Geer, Herman, Kloss, Sneath, GH, and KSL owed to the DFT and its Beneficiaries; and to commit constructive fraud or fraudulent concealment against the Beneficiaries, as further described herein, *supra*.

182.    In addition to other conduct described herein, Geer acting for herself and HG, committed overt acts in furtherance of the Defendants' common purpose, which has resulted in actual legal damage to the Beneficiaries, which overt acts include but are not limited to (i) executing the SA, APA and NDA; (ii) concealing the purported settlement from the Beneficiaries; (iii) engaging Sneath to defend her personally, while seeking to recover from the DFT the fees that Geer and her professional liability insurer paid to Sneath; (iv) by refusing to obey the Beneficiaries' written demands to distribute the entirety of their interests in the DFT and to cease presenting herself as trustee of the DFT; (v) by acting in defiance of the judicial determination that the DFT is not a business trust by continuing to mascaraed as an executive of a business trust rather

than as a fiduciary of the Beneficiaries; and (vi) by taking legal positions in direct conflict with the Beneficiaries, including appealing the determination of the Bankruptcy Court that the DFT was not a business trust, in Geer's adverse role as a purported *creditor* of the DFT.

183.    Further, upon information and belief, HG funded a portion of the legal fees paid to Sneath for his defense of Geer.

184.    In addition to other conduct described herein, Herman committed overt acts on behalf of himself and HG, in furtherance of the Defendants' common purpose, which has resulted in actual legal damage to the Beneficiaries, which overt acts include but are not limited to (i) commencing the First OC Case and seeking *ex parte* relief to prevent the Beneficiaries from interfering with the Defendants' improper common purpose; (ii) moving for the *pro hac vice* admission of Kloss in the DFT/NFT Litigation despite Herman's admission of conflicting interests and Herman's knowledge of Kloss' conflicting interests; (iii) failing to disclose the sham settlement to the Beneficiaries; (iv) by acting in defiance of the judicial determination that the DFT is not a business trust by continuing to operate against the interests of the Beneficiaries, despite ostensibly acting in a fiduciary capacity to the Beneficiaries as a purported attorney for the DFT; and (v) by advocating legal positions in direct conflict with the Beneficiaries, including filing an appeal for *creditors* Geer and Kloss of the determination of the Bankruptcy Court that the DFT was not a business trust.

185.    In addition to other conduct described herein, Kloss acting for himself and KSL, committed overt acts in furtherance of the Defendants' common purpose, which has resulted in actual legal damage to the Beneficiaries, which overt acts include but are not limited to (i) entering his appearance for the purpose of presenting a sham settlement of the DFT/NFT Litigation despite holding conflicting interests with the DFT and its Beneficiaries; (ii) contending to the Court that

he represented the Dille Family Trust, only later to claim, inconsistently, that he represented the *trustee* of the DFT; (iii) accepting the proceeds of the sham settlement into KSL's trust account in New York; (iv) failing to disclose the sham settlement to the Beneficiaries; (v) by acting in defiance of the judicial determination that the DFT is not a business trust by continuing to operate against the interests of the Beneficiaries, despite ostensibly acting in a fiduciary capacity to the Beneficiaries as a purported attorney for the DFT; and (v) by advocating legal positions in direct conflict with the Beneficiaries, including filing an appeal for *creditors* Geer and Kloss of the determination of the Bankruptcy Court that the DFT was not a business trust.

186.    In addition to other conduct described herein, Sneath acting for himself, Geer, Herman and GH, committed overt acts in furtherance of the Defendants' common purpose, which has resulted in actual legal damage to the Beneficiaries, which overt acts include but are not limited to (i) concealing the identity of his true client, Geer individually, from the Beneficiaries; (ii) representing to Judge Deller on September 10, 2019 that he did not know the terms of the sham settlement beyond the information revealed on the docket; (iii) failing to disclose or remedy his concurrent representation of conflicting interests, despite the demand of the Beneficiaries that he do so; (iv) failing to disclose the sham settlement to the Beneficiaries; (v) by acting in defiance of the judicial determination that the DFT is not a business trust by representing Geer in her continuation of conduct against the interests of the Beneficiaries, despite ostensibly acting in a fiduciary capacity to the Beneficiaries as a purported attorney for the DFT; and (vi) by advocating legal positions in direct conflict with the Beneficiaries in defending Geer and accepting payments from Geer's professional liability insurer to defend Geer, even as he continued to contend that he represented the DFT.

187.    In addition to other conduct described herein, O'Malley acting on behalf of himself, NFT, BRC (once formed), Mr. McDevitt, Ms. McDevitt committed overt acts in furtherance of the Defendants' common purpose, which has resulted in actual legal damage to the Beneficiaries, including the overt acts described in paragraph 115 of this Amended Complaint and (i) representing to Judge Deller on September 10, 2019 that the SA was confidential despite his prior representation to Judge Beetlestone on February 28, 2019 that the same SA was *not* confidential; (ii) failing to disclose his knowledge of the material fact that the Beneficiaries had not been aware of the purported settlement; (iii) failing to disclose his knowledge of the material fact that the Beneficiaries would have opposed the terms of the purported settlement, which he knew from the Beneficiaries' objections to the Geer-NFT Plan; (iv) failing to disclose that the DFT was not a business trust, which he knew from Judge Deller's recent opinion in the Chapter 11 Case; (v) failing to disclose his knowledge of the material fact that DFT lacked the capacity to sue or be sued, which he knew from Judge Deller's opinion; (vi) failing to disclose the material fact the DFT is not a party that can sue or be sued; (vii) presenting the SA and APA to Judge Beetlestone on February 28, 2019 without disclosing material misstatements in the APA, including that Geer lacked the authority to convey good and marketable title to the DFT's assets; that the SA and APA could not be duly and validly authorized and ratified by all necessary corporate and other actions on the part of DFT; and that no other proceeding would be needed to authorize the transactions contemplated in the APA; and (viii) by failing to disclose the pendency of the First OC Case.

188.    In addition to other conduct described herein, Mr. McDevitt committed overt acts in furtherance of the Defendants' common purpose, which has resulted in actual legal damage to the Beneficiaries, which overt acts include but are not limited to executing the SA on behalf of NFT, and executing the APA on behalf of BRC.

189.    In addition to other conduct described herein, Ms. McDevitt committed overt acts in furtherance of the Defendants' common purpose, which has resulted in actual legal damage to the Beneficiaries, which overt acts include but are not limited to executing the NDA on behalf of NFT and on behalf of BRC.

190.    The Defendants had an implicit or explicit agreement to engage in and mutually share in the benefits of defrauding the Beneficiaries of the DFT for the mutual benefit of the Defendants.  At all material times hereto, the Defendants conspired with each other to engage in the various activities set forth herein, agreed to participate in the operation of a conspiracy to defraud or harm the Beneficiaries by virtue of the aforementioned breach of the fiduciary duties that Defendants Geer, Herman, Kloss, Sneath, GH, and KSL owed to the DFT and its Beneficiaries; as well as their constructive fraud; and aided and abetted one another in these activities as described above, and the concealment thereof.

191.    The Defendants understood and intended to that their conduct would harm the Beneficiaries.

192.    The Defendants' participation in the foregoing scheme to defraud the Beneficiaries demonstrates intentional and willful conduct by the Defendants, in reckless disregard of the rights of and fiduciary duties owed to beneficiaries.

193.    As described herein, each Defendant committed acts in furtherance of the conspiracy, including by falsely describing and acknowledging without Beneficiaries' authority, knowledge or approval that NFT's "intellectual property rights are superior to those of" DFT and by purportedly conveying intellectual property rights and "Choses In Action" in their sham settlement and judgment thereon, in a knowing violation of the fiduciary duty of Defendants Geer, Herman, Kloss, Sneath, GH, and KSL.

194.    As a result of the aforementioned conduct, Defendants have proximately caused substantial damages to the DFT and its Beneficiaries, as further described herein.

### COUNT VI – AIDING AND ABETTING BREACH FIDUCIARY DUTY AND CONSTRUCTIVE FRAUD/FRAUDULENT CONCEALMENT
### BENEFICIARIES V. MR. MCDEVITT, MS. MCDEVITT, O'MALLEY, BRC, AND NFT

195.    The preceding paragraphs are incorporated by reference.

196.    To the extent that it is inconsistent with any other allegations herein, the Plaintiffs plead this Count as an argument in the alternative.

197.    Defendants Geer, Herman, Kloss, Sneath, GH, and KSL owed a fiduciary duty to the DFT and its Beneficiaries.

198.    As described in this Amended Complaint, *supra*, Defendants Geer, Herman, Kloss, Sneath, GH, and KSL breached their fiduciary obligations to the DFT and its Beneficiaries and committed constructive fraud/fraudulent concealment.

199.    As described in this Amended Complaint, *supra*, Defendants Mr. McDevitt, Ms. McDevitt, O'Malley, BRC, and NFT knowingly participated in the breach of fiduciary duty of Defendants Geer, Herman, Kloss, Sneath, GH, and KSL.

200.    As described in this Amended Complaint, *supra*, Defendants Mr. McDevitt, Ms. McDevitt, O'Malley, BRC, and NFT knowingly participated in the constructive fraud/fraudulent concealment committed by Defendants Geer, Herman, Kloss, Sneath, GH, and KSL.

201.    Defendants Mr. McDevitt, Ms. McDevitt, O'Malley, BRC, and NFT had knowledge of the above breaches of fiduciary duties and constructive fraud/fraudulent concealment and aided and abetted their co-Defendants in the commission thereof, providing substantial assistance or encouragement in effecting the same.

202.    As a direct and proximate result of the referenced breach of fiduciary duty and constructive fraud/fraudulent concealment, in which Defendants Mr. McDevitt, Ms. McDevitt, O'Malley, BRC, and NFT knowingly participated, the DFT and its Beneficiaries incurred substantial damages, as further described herein.

203.    As a direct and proximate consequence of the foregoing causes of action against the Defendants, the Beneficiaries have incurred considerable monetary and non-monetary damages, including but not limited to lost opportunities, lost profits, reputational harm, and potential impairment of the value of DFT assets, of at least $10 million, and attorneys' fees and expenses.

204.    Considering the Defendants' abject, egregious nature of the Defendants' misconduct, the Court should exercise its discretion to award exemplary damages to the Beneficiaries, as punishment for the Defendants' misconduct and to deter future misconduct.

WHEREFORE, the Beneficiaries respectfully request that this Court enter judgment against the Defendants and in favor the Beneficiaries, (i) vacating the March 4, 2019, Order dismissing the DFT/NFT Litigation; (ii) determining the APA, SA and related agreements and instruments *void ab initio* for fraud upon the Court and since the DFT is not an appropriate party and Geer lacked authority to bind DFT; (iii) granting a monetary award to the Beneficiaries in the amount of $10 million, plus attorneys' fees and costs; (iv) granting a further award of exemplary damages to the Beneficiaries, in an amount as the Court deems sufficient to punish the Defendants and deter future abuse, and (v) such other relief as this Court may deem just and appropriate.

///
///
///
///
///
///

Dated:  June 16, 2020

Respectfully submitted,

Aurelius P. Robleto
PA I.D. No. 94633
ROBLETO KURUCE, PLLC
6101 Penn Avenue, Suite 1306
Pittsburgh, PA 15206
Tel: (412) 925-8194
Fax: (412) 346-1035
apr@robletolaw.com