**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ROBERT NICHOLS FLINT DILLE,** **LORRAINE DILLE WILLIAMS** **Plaintiff,** | **CIVIL ACTION** |
| **v.** | |
| **LOUISE A. GEER, DANIEL I. HERMAN,** **DAVID KLOSS, BRIAN McDEVITT,** **DIANE McDEVITT, JOHN O'MALLEY,** **HENRY M. SNEATH, GEER AND** **HERMAN, P.C., KLOSS STENGER &** **LOTEMPIO, THE BUCK ROGERS** **COMPANY, THE NOWLAN FAMILY** **TRUST,** **Defendants.** | **NO.  20-924** |

## OPINION

This is but one skirmish in a multi-year, multi-lawsuit, multi-party war being fought over the rights to the fictional world of comic character Buck Rogers, a 25th century space explorer. It began with a feud between the Dille and Nowlan families—who are at the center of this dispute—which dates back to the 1920's.  One of the latest battles was before this Court in a previous case brought by the Dille Family Trust ("DFT") against the Nowlan Family Trust ("NFT") seeking to overturn the United States Trademark Office's decision granting the NFT's registration of the "Buck Rogers" mark.  After years of back and forth, it seemed that at last—at least with respect to the trademark dispute before this Court—a truce had been negotiated.

On February 28, 2019, David Kloss, as counsel representing the Dille Family Trust ("DFT"), and John O'Malley, as counsel to the Nowlan Family Trust ("NFT"), informed the Court that a settlement had been reached regarding the parties' dispute over the Buck Rogers trademark.  The settlement agreement had been executed by Louise Geer, the purported Trustee of the DFT, and Brian McDevitt, as Trustee of the NFT.  The settlement included an agreement

for the NFT to purchase the DFT's rights to the Buck Rogers character for $300,000.  On March 4, 2019, the case was dismissed with prejudice under Federal Rule of Civil Procedure 41(a)(1)(B) pursuant to the parties' joint stipulation.

But alas, the peace did not hold.  Now the Plaintiffs, who are the sole beneficiaries of the DFT ("Plaintiff Beneficiaries"), bring this separate action alleging that the settlement was obtained by fraud and in violation of various Defendants' fiduciary duties to the Plaintiff Beneficiaries.[1]  They seek to vacate the order dismissing the previous suit, to have the settlement and related agreements declared *void ab initio*, as well as compensatory and punitive damages.

## I.    BACKGROUND

### A.  The Parties

First, an introduction to the cast of characters appearing in this drama will prove helpful:

- **Robert Nichols Flint Dille and Lorraine Dille Williams ("Plaintiff Beneficiaries"):** Plaintiff Beneficiaries are a brother and sister and the sole beneficiaries of the Dille Family Trust, a California family estate planning trust formed by their parents over 40 years ago.  They claim that the various Defendants, including the purported Trustee of the DFT (Geer), conspired to reach a sham settlement agreement that deprived them of their rights to the Buck Rogers comic book empire.  They allege that this sham settlement will be used to dismantle the DFT and make fraudulent disbursements if it is not voided.

- **Defendant Louise A. Geer:** Louise Geer is at the center of the dispute.  Geer is the purported Trustee of the DFT, a position that Plaintiff Beneficiaries vehemently deny she ever lawfully held.  She is a Pennsylvania-based attorney and a partner in the law firm Geer and Herman, P.C.  Plaintiff Beneficiaries allege that she pushed through the

---

[1] Several Defendants argue that this Court lacks jurisdiction over this dispute because the DFT/NFT Litigation was dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(a).  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  The Supreme Court's decision in *Kokkonen*, holding that a federal court does not retain inherent authority to enforce a settlement agreement after a case is dismissed pursuant to Federal Rule 41(a) in the absence of clear language in the dismissal order retaining jurisdiction, is inapplicable here.  Plaintiff Beneficiaries invoke the Court's diversity jurisdiction in this separate tort action, rather than invoking the Court's inherent authority to enforce a settlement after a case is dismissed.  *See Herring v. United States*, 424 F.3d 384, 389 (3d Cir. 2005).  There is diversity jurisdiction under 28 U.S.C. § 1332 because the citizenship of the parties is completely diverse and the amount in controversy as pleaded exceeds $ 75,000.

sham settlement without informing them, despite her lack of authority to act on behalf of DFT.  Plaintiff Beneficiaries allege that her activities were fraudulent and a breach of her fiduciary duty.

- **Defendant David Kloss:** A New York attorney, David Kloss briefly represented the DFT in the DFT/NFT Litigation brought and settled in this Court.  He presented the disputed settlement agreement to the Court. Plaintiff Beneficiaries allege that Kloss failed to disclose a known conflict of interest that made his representation inappropriate, and that his presentation of the fraudulent settlement agreement to this Court amounts to fraud upon the court.

- **Defendant Daniel I. Herman:** A Pennsylvania-based attorney, Daniel I. Herman is husband to Louise Geer and her partner in the Geer and Herman, P.C. law firm. Herman represented DFT creditors in the DFT's Chapter 11 bankruptcy action. Herman also moved to admit David Kloss as an attorney in the DFT/NFT Litigation before this Court, which the Plaintiff Beneficiaries allege was improper due to Herman's conflict of interest with the DFT stemming from his involvement in the Chapter 11 case.

- **Defendant Henry Sneath:** Sneath is a Pennsylvania attorney, a partner in the law firm Houston Harbaugh, P.C., and has variously purported to serve as counsel to Geer, Herman and the DFT.  Plaintiff Beneficiaries allege that Sneath made various misrepresentations regarding the settlement agreement in other courts, and that he prevented the Plaintiff Beneficiaries from obtaining information regarding the Defendants' fraudulent activities.

- **Defendant Geer and Herman, P.C. ("GH"):** A Pennsylvania restricted professional corporation, with shareholders Geer and Herman.

- **Defendant Kloss Stenger and LoTempio ("KSL")**: A New York law practice in which David Kloss is a shareholder.  KSL, as a creditor, engaged Herman as its attorney in the DFT's Chapter 11 bankruptcy case.

- **Defendant Nowlan Family Trust ("NFT"):** A business trust formed under Pennsylvania law that has been engaged in a years-long dispute with the DFT about the rights to the Buck Rogers comic book universe.

- **Defendant Buck Rogers Company ("BRC"):** A limited liability company recently formed under Pennsylvania law.

- **Defendants Brian McDevitt and Diane McDevitt:** Both Pennsylvania based attorneys, as well as: (1) trustees of the NFT; and, (2) members of the BRC who executed documents on behalf of the NFT and BRC, including the settlement agreement, that allegedly contributed to the fraud.

- **Defendant John O'Malley:** O'Malley represented the NFT, BRC, and the McDevitt Defendants in the allegedly fraudulent settlement agreement.  O'Malley has regularly appeared on behalf of the NFT in various related lawsuits.

   ## B.  Litigation History

As the Western District of Pennsylvania keenly noted: "Casual observers could be forgiven for thinking that litigation between Louise Geer and Flint Dille and Lorraine Dille Williams is ongoing in nearly every court across the Commonwealth of Pennsylvania."  *See In re Dille Family Tr.*, 598 B.R. 179, 182 (Bankr. W.D. Pa. 2019) (mentioning that "[t]his case is a saga.").  As Plaintiff Beneficiaries candidly submit—seemingly without irony in a comic book related dispute—the Nowlan family is their arch nemesis.  By way of reference, here is a summary of the relevant disputes between the parties:

- **The Trademark Dispute:** In 2009, DFT and NFT each filed to register the Buck Rogers trademark with the United States Trademark office.  The Trademark Trial and Appeal Board (TTAB) took briefing and held a hearing, after which it denied DFT's opposition to NFT's registration of the Buck Rogers mark.  The TTAB found that DFT had failed to prove that the Trust (as opposed to now-deceased members of the Dille family) had used the Buck Rogers mark before the filing of NFT's application in January 2009.  See Dille Family Tr. v. Nowlan Family Tr., 2015 WL 6121770, at *6 (T.T.A.B. 2015).

- **The DFT/NFT Litigation:** The Dille Family Trust v. The Nowlan Family Trust, (2:15-cv-06231) is the underlying litigation that is the subject of this dispute.  Geer filed an action on behalf of the DFT in this Court on November 19, 2015 challenging the TTAB decision rejecting the DFT's opposition to the NFT's trademark application.  The complaint further alleged various counts of unfair competition and trademark infringement with respect to NFT's use of the Buck Rogers intellectual property.  Counsel for the DFT (Kloss) and NFT (O'Malley) purported to settle this dispute and stipulated to its dismissal on February 28, 2019.

- **The Chapter 11 Bankruptcy Case:** While the DFT/NFT Litigation was on-going, Geer authorized the filing of a voluntary petition for Chapter 11 Bankruptcy on November 28, 2017, without notice to or approval from Plaintiffs as Beneficiaries of the DFT.  The Bankruptcy Court (Judge Deller) granted the Plaintiff Beneficiaries' Emergency Motion to Dismiss the Chapter 11 case on February 20, 2019, concluding that the DFT was not a business trust and therefore not eligible to file for bankruptcy. See In re Dille Family Tr., 598 B.R. 179, 197-98 (Bankr. W.D. Pa. 2019).

- **First Orphans' Court Action:** On February 20, 2019—about one week before the DFT/NFT Litigation settlement—Geer, represented by Herman and HG, filed for a

declaratory judgment in the Orphans' Court Division of the Court of Common Pleas of Lawrence County, Pennsylvania. The complaint sought a declaration that the Plaintiff Beneficiaries owed a fiduciary duty to the DFT and therefore could not continue to undermine the intellectual property rights in Buck Rogers that were an asset of the DFT. The Plaintiff Beneficiaries, as the defendants in this action, removed to the Western District of Pennsylvania and moved for sanctions against Herman, as counsel to Geer. Geer voluntarily dismissed the suit on April 12, 2019.

- **Second Orphans' Court Action:** On April 17, 2019—two weeks after the DFT/NFT settlement—Geer, through her attorney Sneath, filed a second declaratory judgment action in Orphans' Court. Plaintiff Beneficiaries allege that this lawsuit is to be the vehicle to distribute funds from the previous settlement of the DFT/NFT Litigation and to thereafter dissolve the DFT. This litigation is on-going before Judge Acker.

- **The Present Dispute:** The present case was filed by the Plaintiff Beneficiaries on February 18, 2020. An Amended Complaint was filed on June 16, 2020. The Amended Complaint attacks the previous settlement of the DFT/NFT Litigation for fraud upon the court, breach of fiduciary duty, constructive fraud, fraudulent conspiracy, negligence, and both conspiracy to commit and aiding and abetting the alleged torts.

### C. Factual Background

Having met the cast of characters and set the scene, let us proceed to the plot. As is required at the Motion to Dismiss stage, the facts are drawn from the Amended Complaint and presented in the light most favorable to the plaintiffs. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

Buck Rogers is comic character created by John F. Dille around 1928.[2] Around that time, Philip Francis Nowlan contracted with John F. Dille to work on the Buck Rogers comic strip. John F. Dille and the John F. Dille Company began using the Buck Rogers mark in 1929. On May 14, 1942, Philip Nowlan and his estate released and assigned all rights in the Buck Rogers character to John F. Dille and the Dille Company. John F. Dille later conveyed his rights to

---

[2] Predictably, given the contentious relationship between the Dille and Nowlan clans, the Nowlans dispute this characterization and instead claim that Philip Francis Nowlan created Anthony (later "Buck") Rogers in his novella *Armageddon 2419 A.D.*, written around the same time. *In re Dille*, 598 B.R. at 182. They apparently agree that Nowlan was under contract with John F. Dille or his companies at the time. *Id.*

Robert C. Dille.  In turn, Robert C. Dille and his wife, Virginia N. Dille—Plaintiff Beneficiaries'

parents—formed the Dille Family Trust under California law on August 16, 1979.  Robert C.

Dille assigned the Buck Rogers intellectual property rights to the DFT, naming his children as

the sole beneficiaries of the trust.  The DFT trust instrument was amended on January 5, 1982.

The DFT is an ordinary estate planning trust, the terms of which are governed by

California state law.  The original situs of the DFT was California, but it was changed to Illinois

on February 1, 1989.  The DFT provides a mechanism for the settlors of the trust, Plaintiff

Beneficiaries' parents, to appoint individual or corporate trustees.  The DFT likewise provides

that in the event of a vacancy in trusteeship, "the trustee then acting, if any, and if not, then a

majority of the beneficiaries shall appoint a successor corporate trustee by an instrument in

writing. . . ."  The DFT does not provide a mechanism for the beneficiaries to otherwise replace

or appoint trustees after the death of their parents.  A corporate trustee is defined as: "a bank,

corporation or other financial institution . . . authorized by law to administer trusts, maintaining a

full-time trust department, and having a combined capital and surplus of at least ten million

dollars ($10,000,000.00)."

The NFT filed a trademark application with the United States Patent and Trademark

Office on January 15, 2009 for the "Buck Rogers" mark, declaring its intent to use the mark for a

variety of goods, including science fiction movies, a series of books featuring comic strips, and

action figures.  The DFT filed a timely Notice of Opposition on June 14, 2011.  Just prior, on

June 6, 2011, the Plaintiff Beneficiaries each signed a one-page document, styled "Dille Family

Trust: Appointment of Successor Trustee," which Geer had drafted, appointing Defendant

Louise Geer as Trustee of DFT.  Geer did not advise Plaintiff Beneficiaries to seek advice from

separate counsel before signing the document.  Geer was not otherwise appointed or approved by

a court as Trustee and does not qualify as a "corporate trustee." [3]

Geer thereafter submitted her testimony as purported Trustee of the DFT to the Trademark Trial and Appeal Board (TTAB) in its opposition to the NFT trademark registration. Defendant Daniel Herman and Vincent LoTempio, of the Defendant law firm KSL, represented the DFT in this action.  The TTAB issued its decision on September 25, 2015, rejecting the DFT's opposition to the NFT's application.  In short, the TTAB found that DFT failed to demonstrate proprietary rights in the Buck Rogers mark prior to the filing of NFT's application. *See Dille Family Tr.*, 2015 WL 6121770, at *8.

Geer, again purporting to act on behalf of the DFT, filed an action in this Court on November 19, 2015 challenging the TTAB decision and further alleging various counts of unfair competition and trademark infringement with respect to NFT's use of the Buck Rogers intellectual property (the DFT/NFT Litigation).  While it is the settlement of the DFT/NFT Litigation in February 2019 that is at the heart of the dispute, to fully understand the Plaintiff Beneficiaries' claims we must follow the winding and litigious path that the parties traversed between the filing of the DFT/NFT Litigation in 2015 and its dismissal in March 2019.

While the DFT/NFT Litigation was pending, Geer authorized the filing of a voluntary petition for Chapter 11 Bankruptcy on behalf of the DFT on November 28, 2017.  This was done without notice to or approval from Plaintiff Beneficiaries.  Plaintiff Lorraine Dille Williams claims that the DFT need not have been financially distressed as she had lent more than $300,000 to the trust, at the behest of Geer, prior to the filing of the bankruptcy petition.  These funds should have been sufficient to satisfy DFT's creditors' claims.  Instead, Geer transferred

---

[3] Plaintiff Beneficiaries argue that Geer's appointment as DFT Trustee was legally invalid, and that even if she was DFT Trustee at some point, Plaintiff Beneficiaries properly removed her before the settlement agreement was reached.  The Court will therefore refer to Geer as the purported Trustee.

these funds to her law firm, Defendant Geer and Herman, P.C., without an invoice or disclosure to the Plaintiff Beneficiaries.  On July 25, 2018, the Bankruptcy Court appointed a Chapter 11 trustee to displace Geer, after her "contumacious failure to respond to discovery requests." Shortly thereafter, on August 26, 2018, Plaintiff Beneficiaries gave Geer written notice that she was being removed as the Trustee of the DFT and demanded that she cease her involvement with the trust.  Still, Geer continued to act purportedly on behalf of the DFT in various fora.

Geer's husband, Defendant Daniel Herman, also appeared in the Chapter 11 case.  He entered his appearance on October 22, 2018 on behalf of KSL and Geer as *creditors* of the DFT. Herman, on behalf of his client Geer, filed a Chapter 11 plan ("the Geer plan") through which Geer would take ownership of the DFT assets.  The Geer plan represented the value of the DFT assets at $1.22 million, but claimed bankruptcy was needed due to anticipated litigation cost of $500,000 to $750,000.  The Geer plan anticipated paying $1,014,285.27 in claims within one year.

Meanwhile, in the DFT/NFT Litigation before this Court, Herman informed the Court on November 15, 2018 that "there exists a conflict of interests" due to his status as a creditor of the DFT, and that "it is absolutely impossible, pursuant to the Rule of Professional Responsibility," for him or for his law firm, Geer and Herman, P.C., to be involved in the DFT/NFT Litigation. About a week later, Justin Kloss—a partner in KSL—withdrew his appearance, as well as that of his partner, Vincent LoTempio, and their law firm from the DFT/NFT Litigation because the firm "has a significant monetary claim against the [DFT] for unpaid costs of representation," which "creates a conflict of interest, of which it would be impossible to resolve while still remaining as counsel."

Herman continued to represent KSL and Geer as DFT creditors in the Chapter 11 case.

On December 2, 2018, Geer and NFT sought to purchase the DFT's assets ("the NFT-Geer plan") in the Chapter 11 case. Geer and NFT offered $500,000 cash as consideration. The Plaintiff Beneficiaries objected and proclaimed their opposition to the NFT-Geer plan. The Bankruptcy Court never weighed in on the plan, however, because it granted the Plaintiff Beneficiaries' Emergency Motion to Dismiss the case on February 20, 2019. The Bankruptcy Court (Judge Deller) concluded that the DFT was not a business trust but an ordinary estate planning trust and therefore ineligible to file for bankruptcy. *See In re Dille*, 598 B.R. at 197-98. Furthermore, the Bankruptcy Court noted that Geer admitted as much in federal court in California,[4] where she argued that a suit against the DFT should be dismissed because the DFT "is not a legal entity that can sue or be sued," but rather "is merely a fiduciary relationship that is not separate from its trustees." *Id.*

The week between the dismissal of the Chapter 11 case on February 20 and the settlement of the DFT/NFT Litigation on February 28 was eventful to say the least. The same day that the Chapter 11 case was dismissed, Geer, Herman, and Geer and Herman, P.C. filed a complaint seeking declaratory judgment in the Orphans' Court Division of the Court of Common Pleas of Lawrence County, Pennsylvania.[5] The Plaintiff Beneficiaries were determined to cut ties with Geer. In compliance with the trust agreement, which provides them the unfettered right to remove their respective shares in the trust property once they reach the age of thirty-five,

---

[4] The litigation in California, mentioned only in passing here, is not significant to the present dispute. It is therefore not included in the summary of disputes, which focuses on the Pennsylvania theater of operation.

[5] Plaintiff Beneficiaries later removed this case to the District Court for the Western District of Pennsylvania. They thereafter moved for sanctions pursuant to Federal Rule 11(c)(2), claiming that the suit was frivolous. Two days after the motion for sanctions was served, on April 12, 2019, Geer voluntarily dismissed the case.

Plaintiff Beneficiaries gave written notice that they were removing the entirety of the trust property on February 20, 2019.  Because the Plaintiffs Beneficiaries' interests comprise 100% of the DFT property, they allege that the DFT was left with no assets after this date.  Plaintiff Beneficiaries then issued a second written notice to Geer of her removal as trustee on February 22, 2019.  On a telephone call three days later, they again informed Geer that she had been unanimously removed as Trustee of the DFT.

Around this time, the DFT/NFT Litigation was on the verge of settlement in this Court. On February 26, 2019, Herman sponsored the *pro hac vice* admission of Defendant David Kloss of KSL in the DFT/NFT Litigation.  Herman did not raise at this time that he had previously informed the Court of his irresolvable conflict of interest with the DFT, nor that another KSL partner (Justin Kloss) had likewise represented that KSL had an impossible to resolve conflict.

On September 28, 2019, at a conference held at the parties' request, the parties informed the Court that the dispute had been settled.[6]  Kloss appeared on behalf of the DFT and Defendant John O'Malley represented the NFT.  Geer did not attend the conference, but she executed the settlement agreement and related asset purchase agreement as purported Trustee of the DFT.  At this conference, Kloss and O'Malley sought the Court's approval of the settlement.  As O'Malley explained: "we would like to get the order, I guess since there's been so much back and forth we would like to put it on the record.  It's not a confidential settlement."  The Court declined to approve the settlement agreement, explaining that the parties should file a notice of dismissal pursuant to Federal Rule 41(a) and confirming that the notice should not include language

---

[6] The parties refer to this variously as a settlement hearing or settlement conference.  It was neither.  It was merely a status conference requested by the parties to inform the Court the dispute was settled.  The Court neither facilitated nor approved of the settlement agreement.  Court approval of a settlement agreement is required only in limited circumstances not relevant to the DFT/NFT Litigation, such as the settlement of class action lawsuits pursuant to Federal Rule 23(e) or the claims of minors and incapacitated persons pursuant to Eastern District of Pennsylvania's Local Rule 41.2.

suggesting the Court approved the agreement or retained jurisdiction over the suit post-dismissal.

Under the settlement agreement, the DFT agreed to dismiss its suit against the NFT, abandon its objections to NFT's trademark application, and assigned the right to bring any and all causes of action on behalf of the DFT to NFT, in exchange for $300,000. The settlement also included an exhaustive release of the Defendants and related parties to NFT, but no similar release for the Plaintiffs as beneficiaries of the DFT. Moreover, the agreement provided for indemnification from the DFT for the Plaintiffs Beneficiaries' claims against the NFT, Defendants Mr. and Ms. McDevitt (Trustees of the NFT), and the NFT beneficiaries and their attorneys. On the other hand, the agreement rejects any indemnification of the DFT by the NFT. Finally, the agreement provided for the dissolution of the DFT through a proceeding in Orphans' Court. KSL took receipt of the proceeds from the settlement.

On March 4, 2019, the suit was dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(B). Plaintiff Beneficiaries, who were not privy to the settlement agreement, allege that parties colluded to deprive them of their rights to the Buck Rogers intellectual property through this fraudulent settlement agreement.

Plaintiff Beneficiaries further allege that the Defendants continued their tortious plot in various other fora after the settlement was reached and the case dismissed, with the intention of concealing the contents of the settlement agreement from the Plaintiff Beneficiaries. To that end, Geer engaged Defendant Henry Sneath as her attorney around March 17, 2019. According to the engagement agreement between Geer and Sneath, he agreed to represent "Louise Geer, Trustee, Dille Family Trust," and "Louise Geer." The agreement is also clear that Geer is personally responsible for the payment of all legal fees and that "no funds from the [DFT] will be used to pay" Sneath's fees or expenses unless a court orders permits such payment. Geer's professional

liability insurer paid at least $55,787.46 of Sneath's fees incurred representing Geer.  Apparently at the behest of Sneath, the DFT, the NFT, and the newly-formed Defendant Buck Rogers Company entered into a Confidentiality and Non-Disclosure Agreement on April 8, 2019. Plaintiff Beneficiaries believe that this agreement was a façade to hide the Defendants' wrongdoing in the underlying DFT/NFT Litigation.

In addition to the confidentiality agreement, Plaintiff Beneficiaries point to representations made by the Defendants in various courtrooms as evidence of an illicit cover-up. For example, during a hearing on a Motion to Reopen the Chapter 11 case on September 10, 2019, O'Malley, acting as counsel for the NFT, claimed that the DFT/NFT Settlement was confidential.  These claims are inconsistent with O'Malley's representations to this Court in the status conference regarding the settlement, where he stated the settlement was not confidential. In this same hearing, Sneath made inconsistent claims about his knowledge of the settlement agreement; specifically, Sneath claimed he did not know the terms of the settlement and that it was confidential, only to later admit that he "was not unaware as to the terms of the settlement" and that he had read the agreement.

On April 17, 2019, Geer (through her attorney Sneath) filed a second action in Orphans' Court on behalf of the DFT, which remains pending before Judge Acker.  In a hearing in that case on October 25, 2019, Sneath represented that the DFT/NFT Litigation settlement was confidential.  In that same action on November 27, 2019, Geer filed: 1) a Petition for Adjudication/Statement of Proposed Distribution; and 2) First and Partial Account, claiming to have lent $301,500 to the DFT sometime after the Chapter 11 case was dismissed in February 2019.  Geer thus claimed to be owed more than the total settlement amount from the DFT/NFT Litigation.

Also in the Second Orphans' Court case, Judge Acker issued an order on December 17, 2019 directing that the Plaintiff Beneficiaries be provided with unredacted copies of the settlement agreement and accompanying Asset Purchase Agreement from the DFT/NFT Litigation.  Plaintiff Beneficiaries received the documents, pursuant to Judge Acker's order, on December 31, 2019 and learned for the first time the terms of the settlement.[7]

### D.  The Current Dispute

Plaintiff Beneficiaries commenced this suit by filing a complaint on February 18, 2020. Before all the Defendants were served, Plaintiff Beneficiaries filed an Amended Complaint on June 16, 2020.  The Amended Complaint alleges six counts against eleven defendants, primarily related to the various Defendants' involvement in litigating and settling the DFT/NFT Litigation before this Court and their actions to conceal the settlement from the Plaintiff Beneficiaries thereafter.  Specifically, Plaintiff Beneficiaries allege that: 1) Defendants Geer, Kloss, and O'Malley committed fraud upon the court by presenting the sham settlement agreement to this Court on February 28, 2019; 2) Defendants Geer, Herman, Kloss, Sneath, GH, and KSL breached a fiduciary duty owed to the Plaintiff Beneficiaries as counsel and/or fiduciaries acting on behalf of the DFT; 3) Defendants Geer, Herman, Kloss, Sneath, GH, and KSL failed to disclose material information to the Plaintiff Beneficiaries and thereby engaged in constructive fraud or fraudulent concealment; 4) Defendants Geer, Herman, Kloss, Sneath, GH, and KSL acted negligently in failing to disclose material information as described above; 5) all the Defendants engaged in a conspiracy to breach a fiduciary duty owed to Plaintiff Beneficiaries and to commit constructive fraud/fraudulent concealment by entering the sham settlement

---

[7] The last action mentioned in the Amended Complaint with respect to the Second Orphans' Court case is that Judge Acker scheduled a hearing for February 7, 2020 "to determine whether or not Attorney Louise Geer is the legitimate and lawful Trustee" of the DFT.

agreement and thereafter concealing the terms; and, 6) Defendants Mr. and Ms. McDevitt,

O'Malley, BRC, and NFT aided and abetted the breach of fiduciary duty and constructive

fraud/fraudulent concealment by knowingly participating and providing substantial assistance or

encouragement in effectuating the above-mentioned acts.

Plaintiff Beneficiaries claim that they have incurred considerable monetary and non-

monetary damages, including but not limited to lost opportunities, lost profits, reputational harm,

and potential impairment of the value of DFT assets, of at least $10 million, and attorneys' fees

and expenses.  They ask this Court to: 1) vacate the March 4, 2019 order dismissing the

DFT/NFT Litigation; 2) declare the Settlement Agreement and related agreements *void ab initio*

for fraud upon the Court and because DFT is not an appropriate party and Geer lacked authority

to bind the DFT; 3) grant monetary damages in the amount of $10 million, plus attorneys' fees

and costs; 4) grant further exemplary and punitive damages; and 5) other such relief as this Court

deems just and appropriate.

## II.      STANDARD OF REVIEW

Defendants, in various groupings, filed six motions to dismiss pursuant to Federal Rule of

Civil Procedure 12(b)(6).  In order to survive a motion to dismiss under Federal Rule of Civil

Procedure 12(b)(6), the complaint must "contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Id.*  In reviewing a complaint,

courts must "accept all factual allegations as true, construe the complaint in the light most

favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint,

the plaintiff may be entitled to relief." *Blanyar v. Genova Prods. Inc.*, 861 F.3d 426, 431 (3d

Cir. 2017) (internal quotations marks and citations omitted).  However, the assumption of truth

does not apply to legal conclusions, such as "[t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citation omitted).

"While legal conclusions can provide the framework of a complaint, they must be supported by

factual allegations." *Id.* at 679.

Additionally, Rule 9(b) imposes a heightened pleading standard on fraud claims,

requiring the party to plead with particularity the circumstances constituting fraud.  The plaintiff

must "support its allegations 'with all of the essential factual background that would accompany

the first paragraph of any newspaper story—that is, the who, what, when, where and how of the

events at issue.'" *United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812

F.3d 294, 307 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d

198, 217 (3d Cir. 2002)).

## III.    DISCUSSION

### A.  Fraud Upon the Court

Plaintiff Beneficiaries allege that Defendants Geer, Kloss, and O'Malley committed fraud

upon the court by presenting the sham settlement agreement to the Court on February 28, 2019.

Kloss, representing the DFT, and O'Malley, representing the NFT, told the Court that the parties

had reached an agreement and sought the Court's approval.  Geer was not present at this

conference, but Plaintiff Beneficiaries allege she executed the settlement documents in her

capacity as the purported Trustee of the DFT and with the intention that the agreement be

presented to the Court.  According to Plaintiff Beneficiaries, Defendants knew, yet failed to

inform the Court, that Geer did not have the authority to enter this agreement because she was

never properly appointed Trustee, that the DFT lacked the capacity to sue or be sued, that the Plaintiff Beneficiaries had not been made aware of the agreement, and that the settlement agreement and related documents contained material misrepresentations.

To state a claim for fraud upon the court, a plaintiff must properly plead: "1) an intentional fraud; 2) by an officer of the court; 3) which is directed at the court itself; and 4) that in fact deceives the court." *Herring v. United States*, 424 F.3d 384, 390 (3d Cir. 2005). Only "egregious misconduct . . . such as bribery of a judge or jury or fabrication of evidence by counsel" is covered. *Id.* (quoting *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 538 F.2d 180, 195 (8th Cir. 1976)). Because "fraud upon the court challenges the very principle upon which our judicial system is based [–] finality of a judgment" – stating a claim "must be not just a high hurdle to climb but a steep cliff-face to scale." *Id.* at 386.

The Court will proceed directly to the fourth element because the Plaintiff Beneficiaries fail to plausibly allege the Court was in fact deceived. The fourth element is met "only where the misconduct at issue has successfully deceived the court" and thus impugned the integrity of the judicial process. *In re Bressman*, 874 F.3d 142, 150 (3d Cir. 2017). In *Bressman*, the attorney accused of fraud had submitted a sworn affidavit to the Bankruptcy Court comprehensively detailing the litigation history of a dispute yet failing to disclose that he had recently recovered a large settlement on behalf of his clients in another jurisdiction. *Id.* at 151. Relying on the material omission in the affidavit, the Bankruptcy Court granted default judgment without offsetting the award based on the undisclosed settlement. *Id.* at 153. As the Third Circuit explained, the attorney, "[k]nowing that the averments had omitted a material fact . . . nevertheless allowed the Bankruptcy Court to rely upon their truthfulness. The court's reliance on the affidavit impugned its integrity." *Id.*

16

Whereas the omissions in *Bressman* threatened the judicial process because the Bankruptcy Court was "depend[ing] on the integrity of appearing counsel" to "ensure that the court has received the full scope of information pertinent to the merits of its consideration," here the conference at issue was not a hearing on the merits of the dispute. Rather, it was a conference requested by the parties to bring to the Court's attention the settlement of their dispute. Unlike in *Bressman*, the Court did not rely on any of the Defendants' averments or submissions in dismissing the case. In fact, the record of the brief conference belies Plaintiffs Beneficiaries' conclusory contention that this Court was "actually deceived" by Defendants' alleged misrepresentations and/or omissions. Despite Defendants Kloss and O'Malley requesting its endorsement, the Court expressly declined to approve the contents of the settlement and declined to retain jurisdiction over the agreement post-dismissal.

If the terms of the settlement are fraudulent, it would be an affront to the rights of the Plaintiff Beneficiaries and not this Court. *See* 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2870 (3d ed. 2020) ("[T]he courts have refused to invoke [fraud upon the court] in cases in which the wrong, if wrong there was, was only between the parties in the case and involved no direct assault on the integrity of the judicial process."). Because no plausible reading of the Amended Complaint suggests that the Court relied on or was misled by the allegedly fraudulent settlement agreement, the claim for fraud on the court must be dismissed.

### B. Breach of Fiduciary Duty

Plaintiff Beneficiaries allege that Defendants Geer, Herman, Kloss, Sneath, GH, and KSL, in their role as counsel or fiduciaries, owed Plaintiff Beneficiaries a fiduciary duty and breached that duty by failing to disclose all relevant and material information regarding the

settlement and by engaging in dealings with the DFT for their own benefit and/or against the interests of the Plaintiff Beneficiaries.

To state a claim for breach of fiduciary duty under Pennsylvania law,[8] the plaintiff must plausibly allege: 1) a fiduciary or confidential relationship with the defendant; 2) that the defendant negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which they were employed; 3) an injury; and, 4) that the defendant's failure to act solely for the plaintiff's benefit was a real factor in bringing about plaintiff's injuries. *See McDermott v. Party City Corp.,* 11 F. Supp.2d 612, 626 n.18 (E.D. Pa. 1998);

---

[8] The Plaintiff Beneficiaries argue that California law applies to determine whether Defendants' breached a fiduciary duty. Under California law, "[p]ersons who owe a fiduciary duty to the trustee of a trust may be liable to the trust beneficiaries for breach of fiduciary duty whenever such fiduciaries actively collude with the trustee in breaching the trustee's own fiduciary duties." *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 80 Cal. Rptr. 2d 329, 355 (Cal. Ct. App. 1998). Plaintiff Beneficiaries return to *City of Atascadero* with respect to the constructive fraud/fraudulent concealment, negligence, conspiracy, and aiding and abetting claims—all of which require a fiduciary relationship in order to hold Defendants liable.

Their argument for the application of California law is based exclusively on the DFT trust agreement, which provides that "all of the terms and provisions hereof shall be interpreted according to the laws of the State of California." However, common law tort claims do not require the Court to interpret the terms and provisions of the trust agreement. *See Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pa., Inc.,* 848 F. Supp. 569, 576 (E.D. Pa. 1994) (holding that a choice of law provision providing that "[t]his Agreement shall be construed, interpreted and enforced" in accordance of the laws of a specific state is restricted in scope to interpreting the agreement and therefore does not govern tort claims between the contracting parties); *see also SunGard Recovery Servs., L.P. v. Comcar Indus., Inc.,* 2003 U.S. Dist. LEXIS 15673, at *6 (E.D. Pa. August 19, 2003) ("As a general rule, a choice of law provision will not be held to govern tort claims 'unless the fair import of the provision embraces all aspects of the legal relationship.'" (quoting *Jiffy Lube,* 848 F. Supp at 576)). The choice of law provision here, like the provision in *Jiffy Lube,* is limited to interpreting the terms of the trust agreement and therefore inapplicable to Plaintiff Beneficiaries' tort claims.

Aside from the provision in the trust agreement, Plaintiff Beneficiaries raise no other choice of law argument in favor of the application of California law to their claims. In fact, Plaintiff Beneficiaries apparently do not dispute that Pennsylvania law applies to the fraud on the court claim and cite to provisions of Pennsylvania law throughout their briefs. Pennsylvania law will therefore be applied to determine whether the Defendants—most of whom are Pennsylvania residents and all of whom allegedly engaged in a conspiracy concentrated in various Pennsylvania courtrooms—are liable in tort to the Plaintiff Beneficiaries.

*Baker v. Family Credit Counseling Corp.,* 440 F. Supp.2d 392, 415 (E.D. Pa. 2006).

   *1. Plaintiff Beneficiaries Fail to State a Claim for Breach of Fiduciary Duty Against Sneath*

   Plaintiff Beneficiaries' claims against Sneath are unique in that Sneath concededly did

not participate in the DFT/NFT Litigation, but rather was hired to represent Geer on March 17,

2019, a few weeks after the allegedly fraudulent settlement was reached.  Sneath thereafter

represented Geer, individually and as purported Trustee of the DFT, primarily in litigation where

the Plaintiff Beneficiaries were adverse parties and represented by separate counsel.  Plaintiff

Beneficiaries plead that Sneath misrepresented to Judge Deller in the Chapter 11 case and Judge

Acker in the Second Orphans' Court case that he did not know the terms of the settlement

agreement and that it was confidential.  They further allege that Sneath prevented them from

obtaining documents and information related to the settlement agreement.

   Plaintiffs Beneficiaries' claims against Sneath for breach of fiduciary duty fail in that, to

the extent the allegations against Sneath are based on his statements made during judicial

proceedings, the claims are barred by judicial privilege.  *See, e.g., Silver v. Mendel,* 894 F.2d

598, 603 (3d Cir. 1990); *Post v. Mendel*, 507 A.2d 351, 355 (Pa. 1986).  Judicial privilege

provides "immunity for communications which are made in the regular course of judicial

proceedings and are material to the relief sought," whether made by "a party, a witness, an

attorney, or a judge."  *Schanne v. Addis*, 121 A.3d 942, 947 (Pa. 2015) (citation omitted).

"[W]here [the privilege] attaches, the declarant's intent is immaterial even if the statement is

false and made with malice."  *Id.*  "Statements contained in pleadings, as well as statements

made in the actual trial or argument of a case, are privileged."  *Post*, 507 A.2d at 353.  This

privilege extends to all tort actions based on statements made during judicial proceedings.  *See*

*Panitz v. Behrend*, 632 A.2d 562, 564 (Pa. Super. 1993).  It yields only when the communication

is not issued as a matter of regular course during the proceedings or is not pertinent and material. *See Bochetto v. Gibson*, 860 A.2d 67, 72-73 (Pa. 2004) (holding the judicial privilege did not apply to an attorney's provision of a complaint to a journalist, as the act was extrajudicial and not relevant to legal proceedings); *Post*, 507 A.2d at 356-57 (finding that judicial privilege did not apply to a letter sent by trial counsel accusing opposing counsel of unethical behavior during the course of an on-going trial because it was immaterial to the relief sought or to the legal claims raised in that proceeding).

All of Plaintiff Beneficiaries' claims regarding representations made by Sneath before Judges Deller and Acker in Bankruptcy Court and Lawrence County Orphans' Court, respectively, are barred by judicial privilege. Specifically, Plaintiff Beneficiaries allege in the Amended Complaint that Sneath: 1) represented to Judge Deller that he did not know the terms of the settlement and that the settlement was confidential; and 2) represented to Judge Acker that the terms of the settlement had not been disclosed to this Court. Such statements are communications, by an attorney, in the regular course of a judicial proceeding, relevant to that proceeding. Regardless of their truth or accuracy, Sneath's statements were pertinent positions taken on behalf of his client (Geer) during judicial proceedings. His statements were in response to the adverse parties' requests for copies of the settlement agreement and relevant documents or to questioning by the court regarding the settlement.[9] Plaintiff Beneficiaries therefore cannot

---

[9] The cases cited by Plaintiff Beneficiaries in response to Sneath's motion to dismiss are inapposite. Plaintiff Beneficiaries make no effort to explain how *LLMD of Mich., Inc. v. Jackson-Cross Co.*, 740 A.2d 186, 191 (Pa. 1999), where the Pennsylvania Supreme Court recognized a limited exception to the witness immunity doctrine for a professional malpractice suit based on the negligent miscalculation of lost profits by an expert witness, is applicable to allegations of fraud against an attorney for statements made while advocating on behalf of a client during a judicial proceeding. Nor is *Williams v. BASF Catalysts LLC*, 765 F.3d 306 (3d Cir. 2014) on point. There, the Third Circuit declined to apply New Jersey's judicial privilege, finding that the complaint alleged a "systematic fraud" over many years, and in many courtrooms, that involved both false statements and the destruction and fabrication of evidence. *Id.* at 317-18. Not only is New Jersey's judicial privilege inapplicable here, but the allegations regarding the

state a claim for breach of fiduciary duty based on these statements.[10]

### 2. Plaintiff Beneficiaries State a Claim for Breach of Fiduciary Duty Against Geer

Plaintiff Beneficiaries allege that Geer breached the fiduciary duty she owed to them as the sole beneficiaries of the DFT when, acting as the purported Trustee, she executed the sham settlement agreement without conferring with them, for her own benefit and to the detriment of them and the DFT. They likewise allege that she continued holding herself out as the Trustee after they informed her that she was not and that she made improper transfers from the DFT to herself without notice or an invoice.

To properly plead a cause of action for breach of fiduciary duty, Plaintiff Beneficiaries must establish that a fiduciary relationship exists between themselves and Geer. *See Baker*, 440 F. Supp.2d at 414-15; *see also Conquest v. WMC Mortg. Corp.*, 247 F. Supp.3d 618, 634 (E.D. Pa. 2017) ("A claimant cannot recover if they are unable to prove a fiduciary duty exists between the parties." (citation omitted)). While under Pennsylvania law a *per se* fiduciary relationships

---

statements made by Sneath in two judicial proceedings in the span of about a month is simply not comparable to the allegations of a years-long fraud scheme that included fabricating and destroying evidence at issue in *Williams. See also Church Mut. Ins. Co. v. All. Adjustment Grp.*, 708 F. App'x 64, 69 (3d Cir. 2017) (finding *Williams* inapplicable because it dealt with conduct, such as destroying, hiding, and fabricating evidence, as opposed to communication made during litigation).

[10] While Plaintiff Beneficiaries' allegations regarding Sneath's statements to Judges to Deller and Acker are clearly communications made during judicial proceedings and therefore covered by judicial privilege, Plaintiff Beneficiaries also allege that Sneath engaged in conduct outside the courtroom in furtherance of this aim, such as inducing the DFT, NFT, and BRC to enter a Confidentiality and Non-Disclosure Agreement. Conduct that is not part of a communication during a legal proceeding is not covered by judicial privilege. *See Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 312 (3d Cir. 2003) ("While some communications may be privileged . . . conduct is clearly susceptible to being punishable as abuse [of process]").

Even so, Plaintiff Beneficiaries do not plausibly allege that they suffered harm from Sneath's ultimately unsuccessful efforts to prevent them from obtaining documents regarding the settlement. Despite Sneath's purported efforts to conceal the terms of the settlement from the Plaintiff Beneficiaries, Judge Acker ordered Sneath to produce unredacted copies of the settlement agreement on December 17, 2019. Sneath complied, and the Plaintiff Beneficiaries are in possession of the requested documents.

exists between the trustee and beneficiaries of a trust, it also recognizes that other facts and circumstances likewise give rise to a confidential relationship. *Manning v. Temple Univ*., 2004 WL 3019230, at *10 (E.D. Pa. Dec. 30, 2004), *aff'd*, 157 F. App'x 509 (3d Cir. 2005) (citing *Basile v. H&R Block, Inc.,* 777 A.2d 95, 102 (Pa. Super. 2001)).  Specifically, a fiduciary relationship exists when "one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms, either because of an overmastering dominance on one side or weakness, dependence or justifiable trust, on the other." *In re Clark's Estate*, 359 A.2d 777, 781 (Pa. 1976) (internal quotation marks and citation omitted); *see also Silver v. Silver*, 219 A.2d 659, 662 (Pa. 1966) ("Although no precise formula has been devised to ascertain the existence of a confidential relationship, it has been said that such a relationship . . . exists whenever one occupies toward another such a position of advisor or counselor as reasonably [] to inspire confidence that he will act in good faith for the other's interest." (citation omitted)).  The "essence" of such a relationship is "trust and reliance on one side, and a corresponding opportunity to abuse that trust for personal gain on the other." *Baker*, 440 F. Supp.2d at 415 (quoting *In re Estate of Scott,* 316 A.2d 883, 885 (Pa. 1974)).

Plaintiff Beneficiaries plausibly allege a fiduciary relationship between themselves and Geer.  Geer argues that Plaintiff Beneficiaries cannot state a claim because they assert that Geer was never the Trustee of the DFT and therefore disclaim that she owed them a fiduciary duty. This ignores both the pleadings and the law.  Plaintiff Beneficiaries clearly plead their claim for breach of fiduciary duty in the alternative, to the extent it is inconsistent with any other allegations therein.  They therefore allege that, to the extent Geer was the purported Trustee, she breached the undisputed fiduciary duty owed to the Plaintiff Beneficiaries by entering into the fraudulent settlement agreement without conferring with them and against their interests.  Nor is

Geer's legal appointment as Trustee a prerequisite to state a claim for breach of fiduciary duty here.  Even if the appointment was a legal nullity, Plaintiff Beneficiaries sufficiently allege that they reposed special confidence and trust in Geer to act on behalf of the DFT by denominating her as trustee.  This created a confidential or fiduciary relationship between the parties.  After making the appointment, Plaintiff Beneficiaries justifiably relied on Geer to act in good faith on behalf of the DFT and in their best interest, a position which provided Geer the opportunity to allegedly abuse that trust for her personal gain.

Plaintiff Beneficiaries likewise plausibly allege that Geer intentionally failed to act in good faith and solely for the Plaintiff Beneficiaries' benefit by failing to keep them apprised of the settlement agreement and related sale of the DFT's assets, entering into the agreement despite Plaintiff Beneficiaries previous opposition to similar (or more generous) offers to purchase the Buck Rogers assets, and leveraging her role as purported Trustee for her personal financial gain.  Finally, Plaintiff Beneficiaries allege that Geer's bad faith actions proximately caused financial harm, lost opportunities, lost profits, reputational harm, and depleted the DFT's assets.  They therefore state a claim for breach of fiduciary duty against Geer.

### 3. Plaintiff Beneficiaries Fail to State a Claim for Breach of Fiduciary Duty Against Kloss and KSL

Plaintiff Beneficiaries allege that Kloss and his law firm, KSL, breached a fiduciary duty owed to them by negotiating the sham settlement agreement on behalf of the DFT.  According to the Amended Complaint, Kloss represented the DFT at the status conference regarding settlement despite knowing there was a conflict of interest between the DFT, himself, and his firm owing to KSL's status as DFT creditor in the Chapter 11 case.  Furthermore, Plaintiff Beneficiaries claim he finalized the settlement agreement without disclosing to them material information regarding its terms.

An attorney's fiduciary duty for conduct in his capacity as counsel stems from an express or implied attorney-client relationship.  *See Estate of Pew,* 655 A.2d 521, 545 (Pa. Super. 1994); *see also Mursau Corp. v. Fla. Penn Oil & Gas Inc.,* 638 F. Supp. 259, 262 (W.D. Pa. 1986), *aff'd sub nom. Murseau Corp. v. Fla. Penn Oil & Gas, Inc.,* 813 F.2d 398 (3d Cir. 1987) ("[T]o recover for a breach of fiduciary duty by an attorney, the plaintiff has a threshold burden of showing existence of an attorney-client relationship." (citations omitted)).  Plaintiff Beneficiaries do not plausibly allege that Kloss or KSL had an attorney-client or otherwise analogous fiduciary relationship with them.  Unlike Geer, who Plaintiff Beneficiaries allege they appointed Trustee, albeit invalidly, Plaintiff Beneficiaries do not allege that they personally placed trust and confidence in Kloss or KSL to act in their best interest.

According to the Plaintiff Beneficiaries, the DFT is an ordinary estate planning trust and therefore merely a fiduciary relationship between the trustee and beneficiaries.[11]  *See Americold Realty Tr. v. Conagra Foods, Inc.,* 136 S. Ct. 1012, 1016 (2016) ("Traditionally, a trust was not considered a distinct legal entity, but a 'fiduciary relationship' between multiple people.  Such a relationship was not a thing that could be haled into court; legal proceedings involving a trust were brought by or against the trustees in their own name" (internal citations omitted)); *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC,* 888 F.3d 29, 40 (3d Cir. 2018) ("The primary point of distinction [between traditional and business trusts] is . . . that a traditional trust exists as a fiduciary relationship and not as a distinct legal entity." (citations omitted)).  While the Plaintiff Beneficiaries at times refer to Kloss as "counsel to the DFT," because Plaintiff Beneficiaries consistently maintain that the DFT is *not* a distinct legal entity that can be represented by counsel, the more accurate description is that Kloss acted as counsel to the

---

[11] The Bankruptcy Court reached the same conclusion in dismissing the Chapter 11 case.  *See In re Dille,* 598 B.R. at 198.

trustee.  Nowhere do Plaintiff Beneficiaries allege that they engaged Kloss or KSL as counsel to themselves individually or as the DFT beneficiaries.  In fact, Plaintiff Beneficiaries repeated reliance on *City of Atascadero*—which explains that under California law a person who owes a fiduciary duty to the trustee may also be liable to the beneficiaries for actively colluding in a breach of fiduciary duty—suggests their understanding that it is Geer, as purported Trustee, to whom Kloss owes a fiduciary duty.  80 Cal. Rptr. 2d 329 at 355.

But it is Pennsylvania law that applies here.  And under Pennsylvania law, Plaintiff Beneficiaries cannot maintain a tort action for breach of fiduciary duty without plausibly alleging an attorney-client or otherwise analogous fiduciary relationship between themselves and Kloss. *See, e.g., Hess v. Fox Rothschild, LLP*, 925 A.2d 798, 808 (Pa. Super. 2007) ("Because [legatees] did not have an attorney-client or other analogous professional relationship with [testator's attorneys], [legatees] cannot maintain an action in tort based on negligence for legal malpractice"); *Krauss v. Claar*, 879 A.2d 302, 308 (Pa. Super. 2005) ("[I]n Pennsylvania, . . . a claim against an attorney for either legal malpractice or breach of an attorney-client agreement, must [generally] be asserted by the attorney's actual client." (citing *Guy v. Liederbach,* 459 A.2d 744, 748 (Pa. 1983)); *Brychczynski v. Robbins*, 2016 WL 783611, at *6 (Pa. Super. Feb. 29, 2016) (holding that a trust beneficiary has no standing to bring a breach of fiduciary duty claim against the trust settlor's attorney because there is no privity between the beneficiary and counsel).[12]

---

[12] Plaintiff Beneficiaries remaining arguments, relating to Pennsylvania law on attorney client privilege and Pennsylvania's Rules of Professional conduct, fail to pass muster.  First, whether Geer, as purported Trustee, may or may not claim attorney-client privilege regarding her communications with Kloss has no bearing on whether Kloss owes the Plaintiff Beneficiaries a fiduciary duty. *See Pittsburgh Hist. & Landmarks Found. v. Ziegler*, 200 A.3d 58, 61 n.2 (Pa. 2019) ("[T]he fiduciary exception provides that the attorney-client privilege cannot be invoked by a trustee of a trust against the beneficiary of a trust where the legal advice was obtained to guide trust management, given that trustees are tasked with providing beneficiaries with information regarding the management of the trust.").  Second,

### 4. *Plaintiff Beneficiaries Fail to State a Claim for Breach of Fiduciary Duty Against Herman and GH*

Plaintiff Beneficiaries' allegations against Herman and GH involve Herman's failure to disclose certain information to the Court near the time of settlement, including failing to disclose his conflict of interest with the DFT at the time he moved for the *pro hac vice* admission of Kloss, that the Plaintiff Beneficiaries had terminated Geer as purported Trustee and removed the trust assets, and that Geer had never been properly appointed trustee.

None of these allegations, however, plausibly allege a fiduciary relationship between Herman and the Plaintiff Beneficiaries at the time of the purported misconduct. Herman and GH withdrew as counsel in the DFT/NFT Litigation before the settlement was reached. As Plaintiff Beneficiaries allege, Herman disclosed to the Court that he had a conflict of interest with the DFT because he was representing Geer and KSL as DFT creditors in the Chapter 11 case, and he therefore withdrew his appearance as counsel on November 15, 2018. Once Herman disclosed his conflict of interest with the DFT and withdrew from the DFT/NFT Litigation, there was no reasonable basis for Plaintiff Beneficiaries to rely on a relationship of confidence or trust with Herman as an adviser or counselor. Nor do Plaintiff Beneficiaries allege that Herman had any continued involvement with the DFT/NFT Litigation, aside from moving for the admission of Kloss, after he withdrew. There is therefore no basis to conclude that Herman knew or had any duty to disclose to the Plaintiff Beneficiaries information regarding the terms or propriety of the

---

Pennsylvania's Rules of Professional conduct cannot form the basis of a cause of action for breach of fiduciary duty. *See* Pa. R. Prof. Conduct 1.2, cmt. 11 ("Where the client is a fiduciary, the lawyer may be charged with special obligations in dealings with a beneficiary"). *But see, e.g., In re Estate of Pedrick*, 482 A.2d 215, 217 (Pa. 1984) (explaining that the Pennsylvania ethical code to which attorneys are held "does not have the force of substantive law."); *Reilly by Reilly v. Se. Pa. Transp. Auth.*, 489 A.2d 1291, 1298-99 (Pa. 1985) ("Perceived violations of either Code . . . are not a proper subject for consideration of the lower courts to impose punishment for attorney or judicial misconduct."); *Struck v. Binns,* 1995 WL 57481, at *6 (E.D. Pa. Feb. 10, 1995) (same).

settlement.  The claim for breach of fiduciary duty against Herman and GH will be dismissed.[13]

### C.  Constructive Fraud/Fraudulent Concealment

Plaintiff Beneficiaries allege that Defendants Geer, Herman, Kloss, Sneath, GH, and KSL, because of their fiduciary relationship to Plaintiff Beneficiaries, were required to disclose material information to them, and that these Defendants' omissions and misrepresentations amount to constructive fraud and/or fraudulent concealment.

Fraudulent concealment in Pennsylvania requires a plaintiff to plead the following elements:

> (1) [Defendant caused] an omission; (2) the omission was material to the transaction at hand; (3) the omission was made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) the omission was made with the intent of misleading another into relying on it; (5) the plaintiff justifiably relied on the omission; and (6) the resulting injury was proximately caused by the reliance.

*Marcum v. Columbia Gas Transm., LLC.,* 423 F. Supp.3d 115, 121 (E.D. Pa. 2019) (internal quotation and citation omitted).  In addition, "Plaintiffs also must show a special relationship that would give rise to a duty to speak between them and the party that fraudulently concealed information."  *Id.*  "Most commonly, this means showing a fiduciary relationship between Plaintiffs and Defendant."  *Id.* (citing *eToll, Inc. v. Elias/Savion Advert. Inc*., 811 A.2d 10, 23 (Pa. Super. 2002)).

Relatedly, a constructive fraud claim under Pennsylvania law "requires a false statement (or omission) on which the other party acts to his injury, without the element of dishonest intent."  *Bucci v. Wachovia Bank, N.A.,* 591 F. Supp.2d 773, 784 (E.D. Pa. 2008) (citations

---

[13] Plaintiff Beneficiaries elsewhere allege that Herman acted as counsel to Geer in the First Orphans' Court case in Pennsylvania state court and represented Geer and KSL as creditors of the DFT in the Chapter 11 case.  These allegations do not establish an attorney-client or otherwise fiduciary relationship with the Plaintiff Beneficiaries, who were opposing parties in those actions and represented by independent counsel.

omitted); *see also Charleroi Lumber v. Sch. Dist.,* 6 A.2d 88, 91 (Pa. 1939) (defining

constructive fraud as "a breach of duty which has a tendency to deceive others and operate to

their injury, even though there is no vicious intent"). Like a fraudulent concealment claim, to

plausibly allege a constructive fraud claim the plaintiff "must be able to allege a relationship

between the parties that would trigger [a] duty to speak." *Bucci*, 591 F. Supp.2d at 784.

Both causes of action therefore require the common element of a confidential or fiduciary

relationship between the plaintiffs and the defendants at the time of the alleged omission that

would trigger a duty to disclose the withheld information. *See Duquesne Light Co. v.*

*Westinghouse Elec. Corp*., 66 F.3d 604, 611 (3d Cir. 1995) ("[T]o be liable for material

nondisclosures, a party must have a duty to speak"). The Amended Complaint alleges that the

duty to disclose was based on the Defendants' fiduciary duty to the Plaintiff Beneficiaries. This

section therefore incorporates the law and analysis regarding fiduciary duties discussed *supra*.

Furthermore, a fiduciary duty that gives rise to a duty to speak must be "a relationship involving

'trust and confidence' between the parties." *Bucci*, 591 F. Supp.2d at 783 (quoting *In re Cara*

*Corp.,* 148 B.R. 760, 772 (E.D. Pa.1992)). Both sides must have acknowledged and accepted

that such a relationship exists. *See In re Cara Corp.*, 148 B.R. at 772 (citing *City of Harrisburg*

*v. Bradford Tr. Co.,* 621 F. Supp. 463, 473 (M.D. Pa. 1985)).

*1. Plaintiff Beneficiaries Fail to State a Claim for Constructive Fraud or Fraudulent*
*Concealment Against Herman, Kloss, Sneath, GH, KSL*

As addressed in detail *supra*, Plaintiff Beneficiaries fail to plausibly allege that Herman,

Kloss, GH, and KSL owed a fiduciary duty that would give rise to a duty to disclose information

to the Plaintiff Beneficiaries. Although Plaintiff Beneficiaries refer to Kloss and Herman as

attorneys to the DFT, because the DFT is concededly not a legal entity but rather a fiduciary

relationship, Herman and Kloss actually represented Geer in her official capacity as the

28

purported Trustee.  Plaintiff Beneficiaries do not allege that they retained Herman, Kloss, or their law firms or otherwise had a contractual relationship with them.

In stark contrast to acknowledging and accepting a relationship of trust and confidence with the Plaintiff Beneficiaries, Herman disclosed to the Court on November 15, 2018 that he had an irresolvable conflict of interest—namely that he was representing the DFT's creditors in the Chapter 11 case—that required him to withdraw from the DFT/NFT Litigation.  Plaintiff Beneficiaries do not plausibly allege that Herman had a duty to disclose information to them regarding the settlement three months after he withdrew from the DFT/NFT Litigation in order to represent the trust's creditors.

Plaintiff Beneficiaries claims against Sneath are even more fraught.  Sneath served as counsel to Geer individually and as purported Trustee only *after* the allegedly fraudulent settlement agreement was reached.  There is therefore no plausible allegation that Sneath had a duty to disclose, or even knew, the terms of the settlement at the time the agreement was reached.  Upon entering the scene, Sneath represented Geer in actions where Plaintiff Beneficiaries were adverse parties represented by independent counsel. Plaintiff Beneficiaries do not plausibly allege that Sneath was aware of and acknowledged a relationship of trust and confidence with them.  Plaintiff Beneficiaries therefore fail to articulate that Sneath had a duty to disclose information to them.

Absent facts alleging a confidential relationship that would give rise to a duty to disclose, the claims for constructive fraud and fraudulent concealment against Herman, Kloss, Sneath, GH, and KSL will be dismissed.

### 2. Plaintiff Beneficiaries State a Claim for Constructive Fraud/Fraudulent Concealment Against Geer

As discussed *supra*, Plaintiff Beneficiaries do plausibly allege that Geer owed a fiduciary duty to them as the purported Trustee of the DFT, regardless of whether this appointment was properly made.  They plausibly allege that they placed their confidence and trust in Geer to act on behalf of the DFT through their efforts to appoint Geer as a trustee.  Geer thereafter purported to acted on behalf of the DFT in the Trademark dispute, the DFT/NFT Litigation, and by filing for bankruptcy on behalf of the DFT.  Thus Geer had a fiduciary duty amounts which required her to disclose material information regarding the DFT to its sole beneficiaries.

Plaintiff Beneficiaries likewise allege that Geer breached this duty by entering into a settlement agreement without disclosing to them any information regarding the terms and by siphoning funds from the DFT.  As is required for fraudulent concealment, Plaintiff Beneficiaries allege that the omission was false and made with the intent to mislead them to rely on it.  According to the Amended Complaint, Geer concealed the terms of the settlement from the Plaintiff Beneficiaries because she knew they would object to it, as demonstrated by their previous objections to other offers or plans to sell the Buck Rogers intellectual property for even greater amounts.  Plaintiff Beneficiaries further allege that this omission caused them an injury because, due to their lack of knowledge regarding the settlement, they were unable to object or intervene and have therefore lost their intellectual property rights to the Buck Rogers comic book world.  Accordingly, they allege that they have suffered monetary damages, lost opportunities, lost profits, reputational harm, and impairment of their trust assets.  Plaintiff Beneficiaries state a claim against Geer for constructive fraud and/or fraudulent concealment.

### D.  Negligence

Plaintiff Beneficiaries allege that Defendants Geer, Herman, Kloss, Sneath, GH, and KSL, as counsel or fiduciaries acting on behalf of the DFT, breached the standard of care owed

to Plaintiffs as the DFT Beneficiaries by their acts, omissions, and failures to disclose material

information as described above.

### 1. Plaintiff Beneficiaries Fail to State a Claim for Negligence Against Herman, Kloss, Sneath, GH, and KSL

Perhaps to circumvent their failure to meet Pennsylvania's certificate of merit

requirements, Plaintiff Beneficiaries disclaim that their negligence claims are for professional

malpractice and instead claim that they are for ordinary negligence.  231 Pa. Code § 1042.3

(providing that in any professional malpractice case, the plaintiff "shall file with the complaint or

within sixty days after the filing of the complaint, a certificate of merit" attesting that a licensed

professional in the same field as the defendant agrees that there is a reasonable probability that

the defendant breached the standard of care); *see also Stroud v. Abington Mem'l Hosp.,* 546 F.

Supp.2d 238, 248 (E.D. Pa. 2008) (citing cases to support the position that "[f]ederal courts in

Pennsylvania have uniformly held that the [certificate of merit] requirement is a substantive rule

of law that applies in professional liability actions proceeding in federal court").  This is a bit

perplexing since the wrongful conduct alleged with respect to Herman, Kloss, Sneath, GH, and

KSL was undertaken in their professional capacity as attorneys.  Plaintiff Beneficiaries allege

that these Defendants, failed to meet the standard of care "as counsel or fiduciaries acting on

behalf of the DFT" by not disclosing relevant and material information to Plaintiff Beneficiaries.

Plaintiff Beneficiaries do not elaborate on the applicable standard of care.

Nevertheless, the distinction between a professional negligence claim and an "ordinary"

negligence claim is of small import here where Plaintiff Beneficiaries fail to plausibly allege that

these Defendants owed them any duty of care or loyalty, as professionals or otherwise.  Without

belaboring the point, it bears repeating that Plaintiff Beneficiaries do not allege that they were in

an attorney-client relationship with Herman, Kloss, Sneath, or any member of their firms at the

time the settlement was reached or thereafter, nor that Defendants provided legal services to Plaintiff Beneficiaries. *See Guy*, 459 A.2d at 748 ("Federal courts interpreting Pennsylvania law have held that the mere negligence of an attorney toward someone other than a client is not actionable."); *id.* at 750 ("We retain the requirement that plaintiff must show an attorney-client relationship or a specific undertaking by the attorney furnishing professional services . . . as a necessary prerequisite for maintaining such suits in trespass on a theory of negligence."); *see also Cost v. Cost*, 677 A.2d 1250, 1254-55 (Pa. Super. 1996) (explaining that an attorney-client relationship is only formed when there is request for legal services and agreement to provide them). In fact, Herman and Sneath represented Geer in actions where Plaintiff Beneficiaries were adverse parties. *See Aetna Electroplating Co. v. Jenkins*, 484 A.2d 134, 136-37 (Pa. Super. 1984) ("[A]n attorney who acts in good faith for the purpose of serving a justifiable and proper interest of the client will not be held liable for unintentional harm caused to third persons, particularly where the third person is an adverse party to litigation.").

Nor do Plaintiff Beneficiaries plead sufficient facts to find that these Defendants were in a confidential or otherwise fiduciary relationship with Plaintiff Beneficiaries outside their capacity as counsel that would give rise to a duty of loyalty or care. The claims for negligence against Herman, Kloss, Sneath, GH, and KSL will be dismissed for failure to state a claim upon which relief could be granted.

### 2. Plaintiff Beneficiaries State a Claim for Negligence Against Geer

Plaintiff Beneficiaries claim for negligence against Geer, on the other hand, may proceed under much the same theory and involving many of the same facts alleged with respect to the claims for breach of fiduciary duty and constructive fraud/fraudulent concealment. While Geer did not act as attorney to the DFT, as discussed in detail *supra*, she purported to act as the

Trustee to the DFT and therefore owed a fiduciary duty to the Plaintiff Beneficiaries.  Plaintiff

Beneficiaries allege that Geer breached the standard of care she owed as a fiduciary by failing to

disclose the terms of the settlement agreement to the Plaintiff Beneficiaries, entering into the

agreement despite her knowledge that the Plaintiff Beneficiaries had previously objected to

similar arrangements, thereafter attempting to conceal the terms of the agreement from Plaintiff

Beneficiaries, and seeking to recover her fees from the DFT despite her misconduct.  Plaintiff

Beneficiaries allege this injured them because the settlement transferred their rights in the Buck

Rogers comic book intellectual property to the NFT, and did so for inadequate consideration.

They likewise allege that Geer's negligence in her handling of the DFT caused them financial

injury, lost opportunities, lost profits, reputational harm, and impaired the DFT assets.  Based on

these allegations, the claim for negligence against Geer may proceed.[14]

### E. Conspiracy to Breach Fiduciary Duty and to Commit Constructive Fraud/Fraudulent concealment

Plaintiff Beneficiaries allege that all the Defendants worked in concert for the common

purpose of entering the sham settlement agreement in the DFT/NFT Litigation as a vehicle to

deprive the Plaintiff Beneficiaries of their interest in the DFT and for Defendants' own profit.

Plaintiff Beneficiaries further allege that the Defendants thereafter cooperated to conceal the

details of the settlement.

---

[14] Defendants are incorrect in their conclusion that the economic loss doctrine bars the cause of action for the tort of negligence.  As the Pennsylvania Supreme Court explained in *Dittman*: "Pennsylvania permits recovery of purely economic losses in a variety of tort actions," including claims arising from professional negligence, where the defendant's breach of duty is independent of a duty owed under a contract.  *Dittman v. UPMC*, 196 A.3d 1036, 1054-55 (Pa. 2018).  Here, Plaintiff Beneficiaries do not allege that Geer owed them a duty under contract.  To the contrary, they allege that Geer was never properly appointed as the Trustee of the DFT.  Plaintiff Beneficiaries' claim for negligence based on a common law theory of fiduciary duty is therefore not precluded by the economic loss doctrine.

To state a claim for civil conspiracy under Pennsylvania law, Plaintiff Beneficiaries must allege: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Gen. Refractories,* 337 F.3d at 313; *see also Giordano v. Claudio*, 714 F. Supp.2d 508, 534 (E.D. Pa. 2010) (citing *McKeeman v. Corestates Bank, N.A.,* 751 A.2d 655, 660 (Pa. Super. 2000).  "A claim of civil conspiracy cannot be pled without also alleging an underlying tort."  *Boyanowski v. Capital Area Interm. Unit*, 215 F.3d 396, 405 (3d Cir. 2000).  Furthermore, "[p]roof of malice is an essential part of a cause of action for conspiracy. . . ." *Goldstein v. Phillip Morris, Inc.,* 854 A.2d 585, 590 (Pa. Super. 2004).  Malice, in this context, means that the conspirators acted with the sole purpose of injuring plaintiffs, rather than in furtherance of other legitimate interests.  *See Thompson Coal Co. v. Pike Coal Co.,* 412 A.2d 466, 472 (Pa. 1979).

As discussed above, the only viable claims for the underlying torts of breach of fiduciary duty and constructive fraud/fraudulent concealment are against Geer.  Since a conspiracy requires "a combination of two or more persons acting with a common purpose[,]" the Court need only consider whether Plaintiff Beneficiaries have alleged sufficient facts to find that any of the remaining Defendants conspired with Geer to commit these alleged violations.  *See In re Orthopedic Bone Screw Prod. Liab. Litig.,* 193 F.3d 781, 789 (3d Cir. 1999) ("[T]he law uniformly requires that conspiracy claims be predicated upon an underlying tort that would be independently actionable against a single defendant."); *see also Morrison v. California*, 291 U.S. 82, 92 (1934) ("It is impossible in the nature of things for a man to conspire with himself.").

> *1. The Claims Against Herman, GH, Sneath, Kloss, KSL, and O'Malley are Barred by the Intracorporate Conspiracy Doctrine.*

It is well-settled that, under the intracorporate conspiracy doctrine, an attorney's conduct

in providing legal services to his client cannot serve as the basis for a conspiracy claim. *See, e.g., Heffernan v. Hunter*, 189 F.3d 405, 413 (3d Cir. 1999) (There is a "ban on conspiracies in the attorney-client context where even more compelling policy concerns exist."). Immunity under the intracorporate conspiracy doctrine is deliberately broad, considering only whether the attorneys' actions were taken within the scope of representation and leaving aside whether the actions were ethically above board. *Id.* ("The challenged activity may violate the canons of ethics, but so long as it is within the scope of representation, it does not eliminate the [intracorporate] exemption from a conspiracy charge" because "[w]hether the chosen means were ethical or appropriate is a separate issue. Attorneys might use unethical tactics in representing clients and yet remain squarely within the scope of their agency."). The intracorporate conspiracy doctrine therefore immunizes an attorney from allegations of conspiring with his or her client unless the alleged actions fall outside the scope of representation and are taken for the attorney's "sole personal benefit.'" *Id.* at 411 (internal quotations marks omitted).

Plaintiff Beneficiaries fail to respond to the intracorporate conspiracy arguments raised by Geer, Herman and GH, and Sneath in their respective motions to dismiss. These arguments are, accordingly, waived or conceded and the motions to dismiss this claim will be granted. *See, e.g., Cook v. W. Homestead Police Dep't*, 2017 WL 1550190, at *3 (W.D. Pa. May 1, 2017) ("Plaintiffs' failure to respond at all to [Defendants] arguments for dismissal . . . will be read as a concession of those arguments, if not a waiver of those issues.").

While Kloss did not raise an argument based on the intracorporate conspiracy doctrine in his motion to dismiss, and O'Malley raised the issue for the first time in his reply brief, the Court still finds that the conspiracy claims against Kloss, KSL, and O'Malley are barred. Kloss cannot

be liable for conspiring with Geer when the alleged conduct, including participating in the DFT/NFT Litigation settlement, was undertaken in his role as her attorney.  Likewise, O'Malley was exclusively acting in his capacity as counsel to the NFT[15] when he participated in the DFT/NFT Litigation—including negotiating and presenting the purportedly fraudulent settlement agreement to this Court—and the related litigation in other courts thereafter.

> 2. *Plaintiff Beneficiaries Fail to State a Claim for Conspiracy Against the McDevitts, the BRC, and the NFT*

The only relevant factual allegations involving the remaining Defendants are that Mr. McDevitt executed the settlement agreement and related asset purchase agreement on behalf of the NFT and BRC, and that Ms. McDevitt executed the Confidentiality and Non-Disclosure Agreement on behalf of the NFT and BRC.  These facts are insufficient to find an agreement between Geer and the Defendants, or that the Defendants acted with malice.  If anything, the facts alleged tend to show that the McDevitts were acting to protect the business interests of the NFT and BRC.  *See Becker v. Chi. Title Ins. Co.*, 2004 WL 228672, at *13 (E.D. Pa. Feb. 4, 2004) (explaining that there is no malice "where the facts show that a person acted to advance his own business interests, and not solely to injure the party injured").  As Trustees of the NFT, the McDevitts would naturally execute agreements on the trust's behalf.  These allegations are devoid of any facts relating to an agreement with Geer to violate the rights of the Plaintiff Beneficiaries, or any facts regarding Defendants' knowledge that Geer was allegedly failing to keep the Plaintiff Beneficiaries apprised of her conduct.  On the limited facts alleged with respect to these Defendants, it is simply implausible to conclude that the McDevitts were actively

---

[15] The NFT, according to the pleadings, is a business trust (rather than an estate planning trust like the DFT) and therefore is a distinct legal entity that can be represented by counsel.

conspiring with the purported Trustee of the opposing party in the DFT/NFT Litigation.  The

claim for conspiracy against the remaining Defendants will therefore also be dismissed.

### F.  Aiding and Abetting Breach of Fiduciary Duty and Constructive Fraud/Fraudulent Concealment

Plaintiff Beneficiaries allege that Defendants Mr. and Ms. McDevitt, O'Malley, BRC,

and NFT aided and abetted Geer's breach of fiduciary duty and constructive fraud/fraudulent

concealment.

Under Pennsylvania law, a person is liable for aiding and abetting a tort where s/he:

> 1) does a tortious act in concert with the other or pursuant to a common design with him, or 2) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or 3) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

*Meyer v. Del. Valley Lift Truck, Inc.,* 392 F. Supp.3d 483, 496-97 (E.D. Pa. 2019) (quoting

*HRANEC Sheet Metal, Inc. v. Metalico Pitts., Inc.*, 107 A.3d 114, 120 (Pa. Super. 2014)).

Similarly, Pennsylvania requires three elements to state a claim for aiding and abetting breach of

fiduciary duty: "1) there must be a breach of fiduciary duty; 2) the defendant must have

knowledge of that breach; and 3) the defendant must have provided 'substantial assistance or

encouragement' in effecting that breach."  *Envtl. Equip. & Serv. Co. v. Wachovia*

*Bank, N.A.*, 741 F. Supp.2d 705, 725 (E.D. Pa. 2010) (citing *Koken v. Steinberg*, 825 A.2d 723,

732 (Pa. Commw. 2003)).

Plaintiff Beneficiaries allege that these Defendants knowingly participated in and

provided substantial assistance and encouragement to effectuate Geer's breach of fiduciary duty

and constructive fraud/fraudulent concealment.  The McDevitts, they allege, executed the

settlement and related Non-Disclosure on behalf of the NFT and BRC.  However, the Plaintiff

Beneficiaries do not plead any facts indicating that the McDevitts had any knowledge that Geer

had breached her fiduciary duty to the Plaintiff Beneficiaries or fraudulently concealed information from them.  Without more, there is no plausible basis to find that the McDevitts knew about Geer's relationship or dealings with the DFT beneficiaries, especially when their own trust was engaged in a contentious and protracted legal battle with the DFT.  Nor do the Plaintiff Beneficiaries sufficiently allege that the McDevitts, on behalf of themselves, the NFT, or BRC, substantially participated or encouraged Geer to breach her fiduciary duty or defraud the Plaintiff Beneficiaries.  The McDevitts executed legal agreements on behalf of the entities they represent.  That is the totality of the conduct alleged, and is insufficient to state a claim for aiding and abetting a third party's tortious conduct.

There are likewise insufficient facts alleging how or when O'Malley participated in, assisted, or encouraged Geer in breaching her fiduciary duty or defrauding the Plaintiff Beneficiaries.  O'Malley acted as counsel to the NFT in the DFT/NFT Litigation, including appearing in this Court to inform it of the settlement agreement, and related actions.  But informing a court that a settlement has been reached does not give rise to an inference that an attorney participated in the alleged wrongdoing of the opposing party to the litigation.[16]  The NFT, again represented by O'Malley, had been successful in the underlying trademark dispute with respect to the Buck Rogers intellectual property rights; the fact that he then settled the related DFT/NFT Litigation in no way indicates fraud or collusion with Geer in her alleged misconduct.  The claims for aiding and abetting will therefore be dismissed.

### IV. CONCLUSION

---

[16] Moreover, as discussed *supra*, O'Malley is immune under the doctrine of judicial privilege for liability based on his statements before this Court or other courts in related proceedings, such as his representations before Judges Acker and Deller regarding the confidentiality of the settlement.

For the foregoing reasons, all claims against Defendants Daniel Herman, David Kloss, Brian and Diane McDevitt, John O'Malley, Henry Sneath, Geer and Herman, P.C., Kloss, Stenger, & LoTempio, Buck Rogers Company, and the Nowlan Family Trust will be dismissed. Plaintiff Beneficiaries' claims against Louise Geer for breach of fiduciary duty, constructive fraud/fraudulent concealment, and negligence may proceed.

An appropriate order follows.

**December 22, 2020**                                          **BY THE COURT**

                                                               /s/Wendy Beetlestone, J.
                                                               _____
                                                               **WENDY BEETLESTONE, J.**